**MONY SECURITIES CORPORATION, Plaintiff,**

v.

**Leland BORNSTEIN and Judith A. Bornstein, Defendants.**

**No. 2:02–CV–9–FTM–29DNF.**

United States District Court, M.D. Florida, Fort Myers Division.

Feb. 26, 2003.

Kathy M. Klock, Gerry S. Gibson, Jonathan B. Butler, Steel, Hector & Davis, West Palm Beach, FL, for MONY Securities Corp., plaintiff.

Joel A. Goodman, Kalju Nekvasil, Stephen Craig Krosschell, Goodman & Nekvasil, P.A., Clearwater, FL, for Leland Bornstein, Judith A. Bornstein, defendants.

## MEMORANDUM AND ORDER

MAGNUSON, District Judge.

This matter is before the Court[1] on Defendants' Motion to Compel Arbitration

---

**1.** This matter was originally assigned to the    Hon. John E. Steele. Pursuant to an inter-

or in the alternative, for Summary Judgment on Plaintiff's claims. For the reasons that follow, the Court grants Defendants' Motion for Summary Judgment.

## BACKGROUND

Defendants Leland and Judith Bornstein invested large sums of their money in viatical settlements, following the advice of Lawrence Keller. In a viatical settlement, an insured sells his or her life insurance policy for an immediate payment approximating the discounted present value of the policy. The investor acquires an interest in the insured's policy, and upon the insured's death, the investor receives the benefits of the policy. Lawrence Keller worked as an independent contractor for Plaintiff MONY Securities Corp. ("MONY") and various other investment firms. The viatical settlements that he sold to the Bornsteins were not investments offered by MONY, but were offered through another company not a party to this lawsuit. After losing much of their money, the Bornsteins contacted MONY in an effort to formally complain. They also eventually filed claims with the National Association of Securities Dealers (the "NASD") against MONY. The NASD requires arbitration of disputes between members, such as MONY, and their customers. MONY filed this declaratory and injunctive action as an alternative to the NASD's arbitration proceedings and argues that arbitration before the NASD is inappropriate in this case.

In November 1997, the Bornsteins contacted Keller in response to an advertisement that they had seen in a newspaper. Keller came to their home and described several investment opportunities, ranging from mutual funds to viatical settlements. In addition, Keller expressly informed the Bornsteins that he worked with MONY,

gave them a business card with the MONY logo on it, the corporations' address, phone number, fax number, and Keller's name printed over the words "Certified Fund Specialist." The business card also listed the following e-mail address for Keller: "lkeller@notes.mony.com." (Clerk Doc. No. 83 [hereinafter L. Bornstein Dep.] Ex. 52.) While Keller also gave the Bornsteins a second business card with the words "Comprehensive Viaticals" over a different address, it is not clear from the face of the business card whether "Comprehensive Viaticals" is the name of a company or a type of product offered by MONY or some other company. (*See* Clerk Doc No. 89 [hereinafter Keller Dep.] Ex. 3.) Keller provided the Bornsteins with a financial profile report. (*Id.* Ex. 28.) The MONY logo is printed at the bottom of every page of the financial profile report. (*Id.*) In a letter to his MONY supervisor, Keller explained that "running the profile" is part of the routine he follows to sell viatical settlements. (Clerk Doc. No. 87 [hereinafter Wright Dep.] Ex. 27.) Keller and the Bornsteins also exchanged several letters. These letters show that before the Bornsteins agreed to purchase the viatical settlements, Keller wrote to them exclusively using the MONY letterhead. (*Compare id.*) Exs. 29–32 (all pre-sale letters on MONY letterhead) *with id.* Exs. 15–17, 22–26 (all post-sale correspondence under the Comprehensive Viaticals name.) As a result, the Bornsteins thought they had purchased the viatical settlements from MONY. (L. Bornstein Dep. Ex. 13 ¶¶ 4–10.)

The record also shows that Keller was an "associated person" of MONY for the purposes of registering with the NASD. First, Keller entered into a stipulation and

circuit assignment under 28 U.S.C. § 294(d), the undersigned is now the Judge of record in this case.

consent agreement with the Securities and Finance Division of the Florida Department of Banking and Finance. (Clerk Doc. No. 79 [hereinafter Pinto Dep.] Ex. 16.) In that stipulated agreement, Keller is referred to as an associated person under the NASD rules. (*E.g. id.* ¶¶ 2, 3B.) In addition, when investigating the Bornsteins' transaction with Keller, MONY itself referred to him as an associated person. (Pinto Dep. Ex. 19 at IV.) Other documents reflect this status as well. (*See, e.g.,* Wright Dep. Exs. 7, 12; Clerk Doc. No. 85 [hereinafter Brant Keller Dep.] at 8.) Finally, numerous documents demonstrate that MONY supervised Keller and other representatives as part of its standard business activity. (Brant Keller Dep. at 24; Wright Dep. Exs. 15–18, 26; Keller Dep. Ex. 5.)

The Bornsteins brought their claims before the NASD in November 2001. In January 2002, MONY initiated this lawsuit seeking injunctive and declaratory relief. MONY argues that as an NASD member, an obligation to arbitrate before the NASD arises under only two circumstances. First, a contract can give rise to an obligation to arbitrate. Second, the NASD requires arbitration when its members are involved in disputes with parties eligible for arbitration. MONY argues that it has no contractual obligation to participate in the Bornsteins' NASD arbitration claims. In addition, even though it is a member of the NASD and is bound by the NASD rules that require arbitration, MONY claims that the Bornsteins are not eligible parties for arbitration under the NASD rules. The Bornsteins now seek to compel arbitration or, in the alternative, ask for summary judgment on MONY's claims. Because the Bornsteins' dispute satisfies the eligibility requirements for arbitration under the NASD rules, the Court grants Defendants' Motion.

## STANDARD OF REVIEW

Rule 56(c) provides that a motion for summary judgment shall be granted only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Genuine issues surface when a reasonable trier of fact could return a verdict for either party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202. A material fact is one that may effect the outcome of the suit. *Id.* The burden of demonstrating that there are no genuine issues of material fact rests on the moving party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Rice–Lamar v. City of Ft. Lauderdale,* 232 F.3d 836, 840 (11th Cir.2000).

When considering a motion for summary judgment, the Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the non-moving party. *Jaques v. Kendrick,* 43 F.3d 628, 630 (11th Cir.1995). If the moving party has carried its burden, the non-moving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *Hilburn v. Murata Elecs. N. Am., Inc.,* 181 F.3d 1220, 1225 (11th Cir.1999). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials and must do more than simply show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The Court does not weigh conflicting evidence or make credibility determinations. *Hilburn,* 181 F.3d at 1225.

In addition, courts will resolve all doubts in favor of arbitration for purposes

of determining the scope of the NASD arbitration requirements. *John Hancock Life Ins. Co. v. Wilson,* 254 F.3d 48, 58 (2d Cir.2001) ("any ambiguity in the language must be construed in favor of arbitration"); *In Re Prudential Ins. Co. of Am.,* 133 F.3d 225, 234 (3rd Cir.1998).

## DISCUSSION

### A. Law of the Case

On February 8, 2002, Judge John E. Steele issued an order denying MONY's Motion for a Preliminary Injunction because MONY failed to demonstrate that its claims were substantially likely to succeed on the merits. (*See MONY Sec. Corp. v. Bornstein,* No. 02–09 (M.D.Fla. Feb. 8, 2002) (Clerk Doc. No. 31) [hereinafter Order].) In his Order, Judge Steele made several important findings of law that continue to govern the proceedings in this case. First, Judge Steele "conclude[d] that MONY, by virtue of its membership in [the] NASD and its agreement to comply with the NASD rules and procedures, has agreed to arbitrate those claims which are within the scope of the provisions of the NASD Code of Arbitration."

Judge Steele went on to analyze these provisions of the NASD Code. Two NASD rules pertain to this action. First, Rule 10101 of the NASD Code provides that NASD members agree to arbitrate "any dispute, claim, or controversy arising out of or in connection with the business of any member of the Association ... (c) between or among members or associated persons and public customers, or others ...." NASD, *NASD Manual* 1128 (Dec. 13, 2002) [hereinafter NASD Code]. Second, Rule 10301(a) of the NASD Code provides that "[a]ny dispute, claim, or controversy eligible for submission under the Rule 10100 Series between a customer and a member and/or associated person arising in connection with the business of such member or in connection with the activities

of such associated persons shall be arbitrated under this Code...." NASD Code § 10301(a). Judge Steele concluded that the NASD Code requires the arbitration of disputes that have both of the following characteristics: (1) the dispute must be between a customer and a member of the NASD or an associated person of an NASD member; and (2) the dispute must arise out of or in connection with the business activities of the NASD member or the associated person of the NASD member. (*See* Order at 6–7.)

While MONY argues that Judge Steele erred in his characterization of the NASD Code requirements, other courts have considered the issue and reached the same conclusion that Judge Steele did. *See Vestax Sec. Corp. v. McWood,* 280 F.3d 1078, 1082 (6th Cir.2002); *John Hancock Life Ins. Co. v. Wilson,* 254 F.3d 48, 59 (2d Cir.2001) (holding that customers of registered representative were also customers of the NASD member); *Hornor, Townsend & Kent, Inc. v. Hamilton,* 218 F.Supp.2d 1369, 1375–76 (N.D.Ga.2002) ("[I]n order for a claim to fall within [NASD Code § 10301], it must be a dispute between a customer and a member and/or associated person, and the dispute must arise in connection with the business of the member or in connection with the activities of the associated person.") (citations omitted); *Investors Capital Corp. v. Brown,* 145 F.Supp.2d 1302, 1307–08 (M.D.Fla.2001) (Presnell, J.) (adopting broad interpretation that customers of associated persons are also customers of the NASD members).

Finally, Judge Steele made important findings of fact based on the evidence available to him at that time. While the factual findings at the preliminary injunction stage do not bind this Court now that the parties have completed discovery, in this case, it is apparent that Judge Steele

had much of the same evidence before him at the preliminary injunction as the Court has before it now. Therefore, the factual findings, while not binding, are instructive. First, Judge Steele found that the "facts establish without dispute that MONY is a securities broker/dealer," and "that Keller was an associated person of MONY within the meaning of the NASD Code...." (*Id.* at 6–7.) Second, Judge Steele determined that the business of MONY is giving investment advice and "includes some level of supervision of its associated persons." (*Id.* at 8.) In doing so, Judge Steele concluded that the activity of supervision can form the basis for an arbitration claim under the NASD. Further, in deciding that the actions of Keller are intricately connected with the business of MONY (investment advice and supervision of its agents), Judge Steele adopted the reasoning from *First Montauk Securities Corporation v. Four Mile Ranch Development Company*, 65 F.Supp.2d 1371, 1379 (S.D.Fla.1999). In that case, the court held that "[a] dispute that arises from a firm's lack of supervision over its brokers arises in connection with its business." *Id., quoted in John Hancock Life Ins. Co.*, 254 F.3d at 58–59. Third, citing the NASD Rule 0120(g), Judge Steele also concluded that the Bornsteins were indeed customers of MONY within the meaning of the NASD Code. (*Id.* at 9.) Rule 0120(g) provides that "the term 'customer' shall not include a broker or dealer." NASD Code § 0120(g). While this definition is exclusive, a different section of the NASD Code defines "customer" in an inclusive way.

> The term "customer" means any person for whom securities are purchased or sold or to whom securities are purchased or sold whether on a regular way, when issued, delayed or future delivery basis. It will also include any person for whom securities are held or carried and to or for whom a member organization extends, arranges, or maintains any credit. The term will not include ... a broker or dealer from whom a security has been purchased or to whom a security has been sold ....

NASD Code § 2520(a)(3).

These conclusions constitute the law of the case. In denying the preliminary injunction request, this Court held that the Bornsteins were customers of MONY and that their dispute with MONY arose out of the business activities or in connection with the business activities of MONY. According to those conclusions, the NASD Code requires arbitration of these claims. Therefore, the appropriate question to ask in adjudicating the Motion is whether the record at this time creates a question of fact on any of Judge Steele's initial findings.

### B. Record of the Case

The NASD requires arbitration of disputes that: (1) are between a customer and a member of the NASD or an associated person of an NASD member; and (2) arise out of or in connection with the business activities of the NASD member or the associated person of the NASD member. (*See* Order at 6–7.) There are no issues of fact on either of the two requirements.

■ First, the dispute is "between a customer and a member and/or associated person." NASD Code § 10301. MONY concedes that it is an NASD member and the record shows that Keller was an associated person of MONY. (*See* Pinto Dep. Exs. 16, 19; Brant Keller Dep. at 8; Wright Dep. Exs. 7, 12.) The NASD Code defines "customer" as anyone for whom securities are bought or sold, except that a customer cannot be a broker or a dealer of securities. NASD Code §§ 0120(g), 2520(a)(3). As part of his attempt to sell viaticals to the Bornsteins, Keller supplied them with a MONY business card, (L. Bornstein Dep. Ex. 52), provided the Born-

steins with a financial profile report over the MONY logo and made with a MONY template, (Keller Dep. at 82 and Ex. 28), and wrote to the Bornsteins exclusively on MONY letterhead until after they had agreed to purchase viaticals, (*compare id.* Exs. 29–32 *with id.* Exs. 15–17, 22–26.) Thus, the Bornsteins were customers of Keller, who was an associated person of MONY, and nothing in the record raises a question of fact on Judge Steele's earlier pronouncement that the Bornsteins were therefore customers of MONY. (*See* Order at 8–9.)

 Second, the dispute arises out of or in connection with the business activities of the NASD member or an associated person of the member. The Bornsteins' NASD claims directly arise from the actions of Keller. MONY's business is giving investment advice. Because of the representations Keller made to the Bornsteins, the investment advice that he gave them on behalf of MONY, and because of his status as an associated person of MONY, Keller's meetings and negotiations with the Bornsteins are in connection with the business activities of MONY. Further, as Judge Steele found, supervision is part of MONY's business activities. (Order at 8 (citing *First Montauk Securities Corporation,* 65 F.Supp.2d at 1379).) Just as in *First Montauk,* the Bornsteins' dispute arises from MONY's lack of supervision over its brokers. Therefore, the dispute arises in connection with MONY's business. *See First Montauk Sec. Corp.,* 65 F.Supp.2d at 1379, *quoted in John Hancock Life Ins. Co.,* 254 F.3d at 58–59.

## CONCLUSION

The record does not create a question of fact on either of the two NASD arbitration requirements. Accordingly, after review of the record, files and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (Clerk Doc. No. 76–2) is **GRANTED** and the case is hereby **DISMISSED** with prejudice. The Clerk shall enter judgment accordingly and close the file. The Clerk is further directed to terminate any previously scheduled deadlines and pending motions as moot.