James A. DAUGHERTY, Rita Daugherty, Donald O. Sowers Thelma J. Sowers, Robert L. Groves, Terri J. Groves, Ronald Watson, Glenn B. Crabtree, Janet A. Crabtree, Goldie Alkire and Edward E. Crabtree, Plaintiffs

v.

**WASHINGTON SQUARE SECURITIES, INC.,** Defendant.

No. CIV.A.03–183.

United States District Court, W.D. Pennsylvania.

July 9, 2003.

Joel A. Goodman, Stephen Krosschell, Clearwater, FL, Counsel for Plaintiffs, James A. Daugherty, at al.

Frank A. Taylor, Briggs & Morgan, P.A., Minneapolis, MN, Counsel for Defendant, Washington Square Securities, Inc.

## MEMORANDUM ORDER

CONTI, District Judge.

### Introduction

Plaintiffs James A. Daugherty, Rita Daugherty, Edward E. Crabtree, Janet A.

Crabtree, Glen B. Crabtree, Robert L. Groves, Terri J. Groves, Donald O. Sowers and Thelma J. Sowers[1] ("plaintiffs") brought this case seeking confirmation of an arbitration award issued on July 15, 2002, by a Panel of Arbitrators (the "Panel") of National Association of Securities Dealers Dispute Resolution, Inc. in Pittsburgh, Pennsylvania. Defendant Washington Square Securities, Inc. ("defendant" or "Washington Square"), a member of the National Association of Securities Dealers ("NASD"), answered and counterclaimed to vacate the arbitration award for two reasons. First, defendant claims that the Panel did not have jurisdiction over the parties' disputes because: (a) plaintiffs were not "customers" as defined under the rules of the NASD Code of Arbitration Procedure (the "NASD Code") and (b) the investments at issue were not "securities." Second, defendant asserts that the Panel exceeded its powers when it decided defendant's motion to dismiss four plaintiffs for lack of jurisdiction and acted in manifest disregard of the law in finding defendant had a duty to supervise its registered representative. This court disagrees with defendant, and it confirms the arbitration award because the NASD Code requires defendant to arbitrate these types of disputes and the Panel neither exceeded its powers nor manifestly disregarded the law.

### Facts and Procedural History

Defendant is a licensed brokerage firm with its primary place of business in Minnesota. Plaintiffs, residents of West Virginia, are individual investors who purchased certain financial products, which were not registered under the securities laws. Plaintiffs purchased the financial products from David Henderson, one of Washington Square's stockbroker representatives. Mr. Henderson was a registered representative of defendant in North Carolina and was acting as a Washington Square investment advisor during the time that he dealt with plaintiffs. Plaintiffs claim that they invested money with Mr. Henderson, knowing and understanding him to be acting as a representative of defendant. Defendant denies it received any money from Mr. Henderson's sale of the financial products and insists that plaintiffs did not have accounts or customer agreements with it and did not purchase its products.

In 1998, Mr. Henderson sold each of the plaintiffs at least one of the following financial products: (1) U.S. Capital Funding, Inc. Promissory Notes, (2) U.S. Capital Funding, Inc. Corporate Funding Notes, (3) ETS Payphones Investments, (4) First Call Telephone Co. Investments, (5) Alpha Telcom Investments, (6) Ferris Productions Investments, (7) 21st Century Pay Communications Investments, and (8) Universe Arcade Equipment Lease Program Investments. These products defaulted and plaintiffs lost money. As a result, on October 4, 2000, plaintiffs filed a claim under the NASD Code alleging numerous common law, federal and state statutory claims against defendant.

On March 7, 2002, defendant objected to the Panel's jurisdiction over the claims of four of the eleven plaintiffs, raising arguments similar to the ones currently before this court.[2] Specifically, defendant

---

1. Although named in the caption, the parties agreed that Ronald Watson and Goldie Alkire, neither of whom were successful in the arbitration, are not parties to this case. (Transcript dated 12/20/2002 at 5–6).

2. Defendant only moved to dismiss the following four plaintiffs for lack of jurisdiction: Donald O. Sowers, Thelma J. Sowers, Glenn B. Crabtree and Goldie Alkire. The record shows that defendant failed to object to jurisdiction concerning the other seven plaintiffs; as a result, plaintiffs argue that defendant waived its objection to arbitration as to the other plaintiffs.

claimed that the four plaintiffs were not its customers because they did not sign customer agreements and they dealt with Mr. Henderson in his individual capacity—not as its representative. Plaintiffs counterargued that jurisdiction existed with respect to the four plaintiffs because defendant waived its jurisdictional challenge, plaintiffs were defendant's customers, and plaintiffs were covered under NASD Rule 10301(a). On May 6, 2002, the Panel heard defendant's jurisdictional challenge as to the four plaintiffs, determined it had jurisdiction over the four plaintiffs' claims, and continued the arbitration proceedings with respect to all eleven plaintiffs.

Following the Panel's decision on this jurisdictional challenge, defendant on May 9, 2002, commenced a case in the United States District Court for the District of Minnesota (the "Minnesota Proceeding") seeking to enjoin the arbitration proceeding with respect to plaintiffs Donald O. Sowers, Thelma J. Sowers, Glenn B. Crabtree and Goldie Alkire, the same four plaintiffs that defendant claimed the Panel should dismiss. On May 23, 2002, after argument and briefs, the court ruled orally in the preliminary injunction hearing that it would not issue an injunction and reserved the right to issue an opinion setting forth its reasoning.

Following the denial of the injunction, the parties returned to arbitration on May 29, 2002. On July 15, 2002, the Panel issued its decision. The Panel found for plaintiffs in the following amounts: James and Rita Daugherty-$131,600.00; Edward Crabtree-$10,620.00; Glen and Janet Crabtree-$88,400.00; Robert and Terri J. Groves-$24,000.00; Donald and Thelma

Sowers-$75,000.00. On July 25, 2002, plaintiffs commenced the current case before this court to confirm the arbitration award. Defendant counterclaimed to vacate the arbitration award.

On August 9, 2002, the district court in the Minnesota Proceeding issued an opinion setting forth its reasons for denying defendant's injunction with respect to the four plaintiffs. In particular, the court concluded that defendant was not likely to succeed on the merits because the four plaintiffs' disputes were arbitrable; the four plaintiffs were customers under the NASD Code; and the disputes arose out of defendant's business. *Washington Square Securities, Inc. v. Sowers*, 218 F.Supp.2d 1108, 1117–1118 (D.Minn.2002) (Rosenbaum, Chief Judge).[3] On March 4, 2003, the district court in the Minnesota Proceeding transferred that case to this court, and the two cases were consolidated.

### Issues

The arguments regarding confirmation or vacation of the arbitration award raise the following legal questions: (1) whether the parties unambiguously agreed to permit the arbitrators to determine if they agreed to arbitrate their disputes, (2) if not, whether this court independently finds that the parties agreed to arbitrate their disputes, and (3) whether the Panel exceeded its powers or manifestly disregarded the law, thereby necessitating that the arbitration award be vacated.

### Legal Standard

■ When parties move to confirm or vacate an arbitration award, "the court's function in confirming or vacating a com-

---

**3.** Plaintiffs argue that the district court in the Minnesota Proceeding found that the disputes between some of the parties present in this litigation to be arbitrable under NASD Rule 10301 and that its ruling is the law of the case. Defendant contends that the ruling by the district court in the Minnesota Proceeding was a "preliminary matter" and does not preclude this court from revisiting the issues based upon the current record. Because this court agrees with the legal conclusions of the district court in the Minnesota Proceeding, it need not address the legal effect in this case.

mercial arbitration award is severely limited." *Mutual Fire, Marine & Inland Ins. Co. v. Norad Reinsurance Co.*, 868 F.2d 52, 56 (3d Cir.1989) (internal citation and quotations omitted). If the parties have clearly agreed to arbitrate, the courts will set aside arbitral verdicts only in "very unusual circumstances," *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995), and there is a "strong presumption" in favor of the arbitration award, *Mutual Fire*, 868 F.2d at 56. *See also* 9 U.S.C. § § 9, 10 (setting forth the grounds for confirming and vacating arbitration awards under the Federal Arbitration Act).

▮ The strong presumption in favor of arbitration, however, does not apply when courts are examining whether the parties agreed to submit their disputes to arbitration. *First Options*, 514 U.S. at 945, 115 S.Ct. 1920 (reasoning that if courts applied the general presumption in favor of arbitration to the question of arbitrability, it "might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide"). Thus, courts must independently review legal questions regarding whether the parties agreed to submit their disputes to arbitration. *Id.* at 943, 115 S.Ct. 1920 ("the court should decide the question just as it would any other question that the parties did not submit to arbitration, namely, independently").

### Discussion

Based upon the extensive record in this case, this court concludes that it is appropriate to confirm the arbitration award. Specifically, this court finds as a threshold matter that the parties did not clearly and unmistakably agree to submit the issue of arbitrability to the Panel and that the question of whether the parties agreed to submit their disputes to arbitration is a question for this court to decide. This court further finds the parties' disputes were arbitrable because their disputes fall within the purview of NASD Rule 10301, which entitles plaintiffs, as customers, to demand that the parties' disputes be arbitrated. This court, like the district court in the Minnesota Proceeding that reviewed the issue of arbitrability with respect to four of the plaintiffs, independently finds that the disputes were arbitrable. Thus, although the Panel did not have the authority to determine arbitrability, its decision on that matter was harmless error because the disputes are arbitrable. This court also concludes that the Panel neither exceeded its authority under the Federal Arbitration Act nor manifestly disregarded the law in making its findings.

### I. Threshold Question of "Arbitrability"

▮ The threshold question is whether the parties clearly and unmistakably agreed to permit the arbitrators to determine whether they agreed to arbitrate their disputes. *First Options*, 514 U.S. at 941–942, 115 S.Ct. 1920 (affirming the decision of the United States Court of Appeals for the Third Circuit that the parties had not agreed to have arbitrators decide whether the parties agreed to arbitrate). It is a threshold question because "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *see First Options*, 514 U.S. 938, 942, 115 S.Ct. 1920. Although federal courts have long recognized and enforced a "liberal federal policy favoring arbitration agreements," *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), there is a clear exception to this policy. The exception arises when the parties raise the question

of whether they have agreed to submit a particular dispute to arbitration. *AT & T Technologies, Inc. v. Communications Workers,* 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) ("Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.") *Id.; see First Options,* 514 U.S. 938, 944, 115 S.Ct. 1920.

Generally, courts and arbitrators need to look no further than the language of the written contract between the parties to find "clear and unmistakable evidence" that the parties intended to submit the question of arbitrability to arbitration. *See Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 80–81, 123 S.Ct. 588, 590–591 (finding the controversy fell within Dean Witter Reynolds, Inc. standard Client Service Agreement's arbitration clause); *John Hancock Life Insur. Co. v. Wilson,* 254 F.3d 48, 53 (2d Cir.2001) (concluding that by "clear and unmistakable evidence," there must be an express agreement between the NASD member and the investors incorporating the NASD Code or providing that "any and all" disputes are to be settled by the arbitrator).

▮ In the case at hand, there is no written contract between the parties, and based upon the evidence of record, there does not appear, as a threshold matter, to be "clear and unmistakable evidence" that the parties intended to submit the question of arbitrability to the arbitrators. *See First Options,* 514 U.S. at 945, 115 S.Ct. 1920. This court must therefore independently determine whether the disputes must be arbitrated. Whether defendant is required to arbitrate the disputes will depend upon the applicability of the NASD

Code because defendant is a NASD member and admittedly, defendant is required to arbitrate certain disputes that fall within the purview of the NASD Code. Before a court examines various, potentially applicable provisions of the NASD Code regarding who is to decide arbitrability,[4] the court must first determine whether the NASD Code applies to the parties' disputes. The mere fact that defendant is a member of the NASD is insufficient evidence to show that the parties clearly and unmistakably agreed to submit the question of arbitrability to the arbitrators to decide. *See First Options,* 514 U.S. at 945, 115 S.Ct. 1920; *John Hancock,* 254 F.3d at 53 (finding that "John Hancock's membership in NASD, without more, is not sufficient to show that the parties agreed to submit the question of arbitrability to arbitrators").

This court must independently decide whether the NASD Code applies to the disputes and requires defendant to arbitrate them. *John Hancock,* 254 F.3d at 58 (proceeding to the second inquiry of whether the dispute falls within the scope of the parties' "agreement" because John Hancock conceded it is a member of NASD and is required to arbitrate all disputes contemplated under Rule 10301). Notably, this court is not the first to examine whether the disputes between defendant and some of the plaintiffs is arbitrable; the district court in the Minnesota Proceeding found, in the context of defendant's injunction proceeding, that the NASD Code required defendant to arbitrate the disputes present in this case with respect to four of the plaintiffs. *Sowers,* 218 F.Supp.2d at 1117–1118.

---

4. For example, Rule 10324 of the NASD Code provides "[t]he arbitrators shall be empowered to interpret and determine the applicability of all provisions under this Code" and Rule 10106 of the NASD Code states that

"[n]o party shall, during the arbitration of any matter, prosecute or commence any suit, action, or proceeding against any other party touching upon any of the matters referred to arbitration pursuant to this Code."

## II. *Are the Parties' Disputes Arbitrable?*

Defendant admits that it is a member of the NASD and it is bound by the NASD Code to arbitrate certain disputes that fall within the purview of the NASD Code. Defendant, however, contests that the NASD Code requires it to arbitrate its disputes with plaintiffs. In arguing that the parties' disputes are not arbitrable under Rule 10301 of the NASD Code, defendant raises two primary arguments: (1) plaintiffs are not customers under the NASD Code[5] and (2) the financial products sold to plaintiffs by Mr. Henderson, defendant's representative, do not qualify as securities. The first of these arguments will be addressed within the context of NASD Rule 10301.[6]

### A. Does the NASD Code Require Defendant To Submit the Disputes in this Case To Arbitration?

Although there is not an express, written contract between the parties, defendant, by virtue of being a member of NASD, is required to arbitrate certain controversies. Specifically, the NASD Code requires defendant to submit the following controversies to arbitration:

> [a]ny dispute, claim, or controversy eligible for submission under the Rule 10100 Series between a customer and a member and/or associated person arising in connection with the business of such member or in connection with the activi-

ties of such associated persons . . . upon demand of the customer.

NASD MANUAL–CODE OF ARBITRATION ("NASD CODE") Rule 10301(a). Under the Rule, member firms may be required to arbitrate claims so long as two substantive conditions of the Rule are met. *Id. See also Vestax Securities Corp. v. McWood,* 280 F.3d 1078, 1081 (6th Cir.2002) (discussing the two conditions of Rule 10301(a) that trigger the NASD arbitration requirement); *John Hancock,* 254 F.3d at 58 (same).

The first substantive condition is that the claim constitutes a "dispute between a *customer* and a member and/or *associated person.*" *Id.* (emphasis added). While the NASD Code provides little guidance as to the definition of the term "customer;" it states that "[t]he term 'customer' shall not include a broker or dealer." *Id.* at Rule 0120(g). An "associated person of a member" is defined in pertinent part as "a sole proprietor, partner, officer, director, or branch manager of a member, or other natural person occupying a similar status or performing similar functions, or a natural person engaged in the investment banking or securities business who is directly or indirectly controlling or controlled by a member." *Id.* at By–Laws, Art I(ee). The second substantive condition is that the dispute "aris[es] in connection with the business of such member or

---

5. Defendant's argument that plaintiffs were not "customers" based on the NASD Code appears only to pertain to plaintiffs Donald Sowers, Thelma Sowers and Glenn Crabtree; defendant argues that the other plaintiffs, James Daugherty, Rita Daugherty, Edward Crabtree, Janet Crabtree, Robert Groves, Terri J. Groves, are not "customers" because of the type of financial product that they purchased. *See* Defendant's Answer and Counterclaim at ¶¶ 20, 21.

6. Plaintiffs argue that defendant, at a minimum, expressly agreed to arbitration with plaintiffs J. Daugherty and R. Daugherty because defendant submitted a Uniform Submission Agreement, stating that it agreed to arbitrate the present controversy after plaintiffs J. Daugherty and R. Daugherty filed their initial arbitration claim. Because this court finds that defendant was required to arbitrate with all plaintiffs by reason of the applicability of NASD Rule 10301, it is not necessary to address plaintiffs' argument with regard to the Daughertys.

in connection with the activities of such associated persons." *Id.* at 10301(a).

### 1. Are Each of the Disputes in this Case Between a Customer and a Member and/or Associated Person?

■ Here, despite defendant's emphatic contention that it lacks both contractual and transactional relationships with plaintiffs, the first substantive condition is met by reason of Mr. Henderson's status as a registered representative and his transactional relationship with plaintiffs. Specifically, Mr. Henderson's status as a licensed, registered representative of defendant qualifies Mr. Henderson as an "associated person of a member."[7] NASD Code at By–Laws, Art I(ee). *See also John Hancock,* 254 F.3d at 50 (applying NASD by-law definition); *BMA Financial Services, Inc. v. Guin,* 164 F.Supp.2d 813, 820 (W.D.La.2001) (holding the member's agent was an associated person upon the filing of the U–4 Form as part of his application for registration). Mr. Henderson's sales of financial products to plaintiffs during the time period when he was acting as a registered representative of defendant evidences that plaintiffs were Mr. Henderson's customers, receiving services and financial products from him.[8] *See* AMERICAN HERITAGE DICTIONARY (3d ed.1996) (defining "customer" as [o]ne that "buys goods or services").

The relationship between plaintiffs and Mr. Henderson—customers of an agent or representative of a financial services firm—has been held by a number of courts to require the defendant NASD member to submit claims to arbitration upon the demand of plaintiff investors under NASD Rule 10301(a). *E.g. Vestax Securities Corp.,* 280 F.3d at 1082 ("an agent or representative of a financial service firm is an 'associated person' under NASD Rule 10301(a) such that a relationship with the agent entitles the investor to the arbitration process"); *John Hancock,* 254 F.3d at 59 (holding that even though the investors were unaware of the agent's relationship with the financial services firm, the investors were customers under NASD Rule 10301(a)); *Oppenheimer & Co., Inc. v. Neidhardt,* 56 F.3d 352, 357 (2d Cir.1995) (finding that when an investor deals with an agent or representative, the investor deals with the member); *Smith v. Bartolini,* 2003 WL 21148940, *3–4 (N.D.Ill., May 14, 2003) ("Interpreting [NASD Rule 10301(a) ] in a straightforward and commonsense manner, we think it is clear that this dispute is arbitable regardless of whether or not ... there was any connection to [the financial firm]."); *Washington Square Securities, Inc. v. Aune,* 253 F.Supp.2d 839, 845 (W.D.N.C.2003) ("a customer or investor does not necessarily have to demonstrate that it dealt directly with the NASD member in order to demand arbitration"); *MONY Securities Corp. v. Bornstein,* 250 F.Supp.2d 1352, 1357 (M.D.Fla.2003) (concluding customers of an associated person are customers of the NASD member); *Sowers,* 218 F.Supp.2d at 1117 ("Court considers them to be customers of Washington Square associated person, and therefore, customers of Washington Square."); *BMA Financial Services, Inc. v. Guin,* 164

---

**7.** Mr. Henderson also qualifies as an "associated person" based on his contractual employment relationship with defendant. *John Hancock,* 254 F.3d at 50 (finding the agent to be an "associated member" because he entered into a Sales Representative Agreement with John Hancock, selling life insurance and annuities on behalf of John Hancock).

**8.** Defendant does not dispute that plaintiffs were customers of Mr. Henderson—it argues that plaintiffs' customer relationships with Mr. Henderson were not enough to make them its customers, and therefore they are not "customers" under NASD Rule 10301(a).

F.Supp.2d 813, 820 (W.D.La.2001) (holding that the financial firm had to arbitrate the investors' claims as long as they were customers of an "associated person"); *First Montauk Sec. Corp. v. Four Mile Ranch Development Co.*, 65 F.Supp.2d 1371, 1381 (S.D.Fla.1999) (holding investors to be customers based on their relationship with the investment broker).[9]

The majority of federal courts faced with interpreting NASD Rule 10301(a) concluded that NASD members must arbitrate disputes raised by customers of their associated persons. The only two federal appellate courts that were squarely presented with the issue decided affirmatively that a NASD member may be required to arbitrate claims brought by investor plaintiffs who purchased financial products from the NASD member's representative even if the investor plaintiffs did not have accounts with the NASD member. *Vestax Securities Corp.*, 280 F.3d at 1082 (6th Cir.); *John Hancock*, 254 F.3d at 59 (2d Cir.). Defendant, however, argues that this court should follow the minority view, propounded by two Florida district courts, and adopt a narrow definition of customer—one that requires independent evidence of a relationship between the investors and the financial firm, such as customer agreements or customer accounts with the financial firm. *See Mony Securities Corp. v. Vasquez*, 238 F.Supp.2d 1304, 1308 (M.D.Fla.2002) (reasoning that the financial firm did not agree to arbitrate claims with investors who did not have accounts with the financial firm or purchase its investments); *Investors Capital Corp. v. Brown*, 145 F.Supp.2d 1302, 1308 (M.D.Fla.2001) (holding that the investors were not customers because they did not have accounts or other evidence of a traditional customer relationship with the financial firm and they did not have evidence that they established an informal business relationship with the financial firm).[10]

Based upon the plain, unambiguous language of NASD Rule 10301(a),[11] this court, holds because plaintiffs are customers of Mr. Henderson (a registered representative of defendant), they are customers of defendant. *See Vestax Securities Corp.*, 280 F.3d at 1082 (looking to the plain language of NASD Rule 10301(a)); *Sowers*, 218 F.Supp.2d at 1117 (with respect to four of the plaintiffs, in an earlier decision in this case, the court reached the same conclusion and noted the reasonableness of placing the burden of controlling stockbrokers upon the brokerage firm with which they are affiliated). In so holding, this court recognizes there will be circumstances where an investor cannot qualify as a customer of a financial firm because of the tenuous nature of the relationship between either the investor and the firm's representative or the investment broker and the financial firm. *See, e.g. Fleet Boston Robertson Stephens, Inc. v. Innovex, Inc.*, 264 F.3d 770, 773 (8th Cir.2001) (holding that a company that only received fi-

**9.** This list of cases is by no means exclusive— it is merely representative of a greater body of cases.

**10.** In *Smith v. Bartolini*, the United States District Court for Northern District of Illinois distinguished *Investors Corp. v. Brown* on the basis that the persons in *Investors Capital Corp. v. Brown*, from whom the investors purchased securities, were not associated with the securities firm at the time the securities were purchased. 2003 WL 21148940, *4.

Rather, these persons were later hired by the firm. *Id.*

**11.** Plaintiffs argue that even if this court were to find the language of NASD Rule 10301(a) to be ambiguous, it would have to allow for arbitration based upon the strong presumption in favor of arbitrability. Because this court finds the language to be unambiguous, it does not address plaintiffs' argument that the presumption applies.

nancial advice, without receiving investment or brokerage related services, does not qualify as a customer); *Wheat, First Securities, Inc. v. Green,* 993 F.2d 814, 820 (11th Cir.1993) (finding that investors who were injured by brokers who were employed by the plaintiff financial firm's predecessor-in-interest did not qualify as customers of the plaintiff financial firm). Here, the relationship was not so tenuous—the plaintiffs who were investors purchased financial products from Mr. Henderson while he was a registered representative of defendant.

### 2. Did the Disputes Arise from Defendant's Business?

▇▇▇ Defendant argues that the parties' disputes do not meet the second substantive condition of Rule 10301(a) and insists that whether the parties' disputes "aris[e] in connection with the business of such member" is the dispositive issue—not whether the disputes arise in "connection with the activities of such associated persons"—because of Rule 10100. Rule 10100 provides in pertinent part that the NASD Code is prescribed and adopted "for the arbitration of any dispute, claim, or controversy arising out of or in connection with the business of any member... between or among members or associated persons and public customers, or others..." Assuming for the sake of argument that Rule 10100 is a dispositive limitation on Rule 10301, this court concludes that the parties' disputes arise in connection with defendant's business.

The parties' disputes center around whether defendant Washington Square failed to properly supervise its registered representative, Mr. Henderson. In similar contexts, the United States Court of Appeals for the Sixth Circuit, *Vestax Sec. Corp.,* 280 F.3d at 1082, and the United States Court of Appeals for the Second Circuit, *John Hancock,* 254 F.3d at 58–59, held that claims asserted against broker-

age firms for failure to properly supervise their representatives arise in connection with the brokerage firms' businesses. *See First Montauk,* 65 F.Supp.2d at 1379 ("A dispute that arises from a firm's lack of supervision over its brokers arises in connection with its business."); *MONY v. Bornstein,* 250 F.Supp.2d at 1357 (same).

These types of claims are held to arise in connection with the NASD member's business for a number of reasons. For example, NASD members reap benefits from having their brokers register with the NASD via Form U–4, and therefore, they should not be able to avoid its burdens. *Aune,* 253 F.Supp.2d 839, 843. Holding NASD members responsible for the actions of their brokers, even when they did not reap any commission benefits from their brokers' transactions with the investors, is important because brokerage firms are likely not to benefit from monies that their agents are misappropriating or wrongly investing and because the market reality is that investment sales are complex and convoluted transactions that require the expertise of several parties. *See id.; Sowers,* 218 F.Supp.2d 1108, 1117. This reasoning is further supported in this case because: (1) plaintiffs averred that they invested their monies with Mr. Henderson, knowing and understanding him to be a representative of Washington Square and (2) defendant averred that it had a system in place to and did in fact diligently supervise Mr. Henderson.

Plaintiffs' claims directly arise from the actions of Mr. Henderson in advising plaintiffs regarding purchasing financial products, and Mr. Henderson is a representative of Washington Square, a reputable brokerage firm, whose business is providing a wide variety of financial products and services, primarily through its representatives. As a result, this court, like the district court in the Minnesota Proceeding,

concludes that plaintiffs' claims arise in connection with defendant's business and consequently, plaintiffs' claims have a sufficient nexus to defendant's business to fall within the scope of NASD Rule 10100. Likewise even if Rule 10100 were not a limitation on NASD Rule 10301(a), Mr. Henderson's activities of selling financial products to plaintiffs while he was an associated person satisfy the second substantive condition of NASD Rule 10301(a). *Sowers*, 218 F.Supp.2d at 1117–1118 (rejecting the Washington Square's argument that "Henderson is a thief but not our thief" and concluding that the disputes are covered by NASD Rule 10301(a)).

### B. Do the Investments Have To Be "Securities" For The Disputes To Be Arbitrable?

■ Defendant argues that the claims of plaintiffs are not arbitrable because the investments at issue do not qualify as "securities" under the three-part test set forth in *SEC v. W.J. Howey & Co.*, 328 U.S. 293, 301, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946).[12] Defendant, however, fails to cite any federal authority for its contention that the NASD Code requires it only to arbitrate claims raised by plaintiffs who have purchased "securities" as opposed to other financial products from its registered agent. Plaintiffs point out, among their numerous arguments,[13] that the question of whether the investments at issue qualify as securities is a red herring because it ignores that the disputes between the parties, concerning whether defendant properly supervised its registered agent, arise out of Mr. Henderson's sale of *financial products* to plaintiffs. *See Miller v. Flume*, 139 F.3d 1130, 1136 (7th Cir.1998) (rejecting the argument that the dispute was not arbitrable because the transaction between the customer and brokers involved "fraudulent conveyances" and not the "buying and selling of securities").

In essence, defendant argues that by not requiring the investment to be a security Pandora's Box will be opened and financial firms will be forced to arbitrate claims as far reaching as when a representative advises an investor about buying a car. Based upon the substantive conditions in NASD Rule 10301(a), this court is unpersuaded by defendant's argument. As addressed above, the substantive conditions of NASD Rule 10301(a) act as limiting conditions and prevent NASD members from having to arbitrate disputes that they have not agreed to arbitrate. *See, e.g. Fleet Boston Robertson Stephens, Inc.*, 264 F.3d 770, 773; *Wheat, First Securities, Inc.*, 993 F.2d 814, 820.

It is also important to note that in the case at hand, Mr. Henderson's communica-

---

12. It is not entirely clear if this argument applies to all eight of the financial products sold by Mr. Henderson to plaintiffs. The only case law that defendant offers in support of its position is *SEC v. ETS Payphones, Inc.*, 300 F.3d 1281 (11th Cir.2002), *cert. granted* —— U.S. ——, 123 S.Ct. 1788, 155 L.Ed.2d 665 (April 21, 2003), in which the United States Court of Appeals for the Eleventh Circuit held that the sale and lease of payphones from ETS Payphones, Inc. do not constitute "securities" under securities law. Plaintiffs argue that securities regulators in sixteen states have found the ETS investments to be securities.

13. Some of plaintiffs' numerous arguments include: (1) the broad language of the NASD Code as well as its broad disciplinary power make clear that NASD members may be required to arbitrate disputes not involving securities; (2) defendant failed to raise to the Panel the argument that plaintiffs' claims were not arbitrable because they did not involve "securities", thereby waiving such an argument; (3) plaintiffs' allegations that the investments that they purchased are securities is sufficient to make the parties' disputes arbitrable under the NASD Rule 10301; and (4) there are sufficient decisions by federal courts and securities regulators supporting that ETS investments are securities.

tions with plaintiffs were not far-reaching advice about buying a car. Rather, Mr. Henderson advised plaintiffs regarding the purchase of eight investments including fraudulent promissory notes and ETS Payphone Investments. Moreover, federal courts faced with deciding arbitrability of disputes involving similar investments have held the disputes to be arbitrable. *See John Hancock*, 254 F.3d at 50 (involving the sale of fraudulent promissory notes); *Smith v. Bartolini*, 2003 WL 21148940, *8 (involving the creation of a trust); *Aune*, 253 F.Supp.2d at 842–845 (involving ETS Investments); *Sowers*, 218 F.Supp.2d at 1118 (involving only fraudulent promissory notes).

This court finds defendant's argument unpersuasive for another reason—the plain language of the NASD Code. "[T]he pertinent sections of the Code—Rules 10101 and 10301—do not tie arbitrability to the presence of a 'security' but instead refer to a 'dispute,' 'claim,' or 'controversy.'" *Smith v. Bartolini*, 2003 WL 21148940, *8. This court also notes that once it found that the NASD Code requires defendant to arbitrate the claims of plaintiffs, any ambiguity as to scope of the agreement must be decided in favor of the arbitration presumption.[14] *Moses H. Cone Memorial Hospital v. Mercury Const. Co.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765. Thus, although this court does not find the pertinent NASD Code provisions ambiguous because they reference "[a]ny dispute, claim, or controversy," if—for purpose of argument only—the language was ambiguous, this court would be compelled to interpret the ambiguity in favor of arbitration. *Schulte v. Prudential*

*Ins. Co.*, 133 F.3d 225 (3d Cir.1995) ("a presumption in favor of arbitration applies and doubts in construction are resolved against the resisting parties"). *See also Armijo v. Prudential Insur. Co.*, 72 F.3d 793, 798 (10th Cir.1995) ("[T]o acknowledge the ambiguity [in NASD arbitration rules] is to resolve the issue, because all ambiguities must be resolved in favor of arbitrability."). Therefore, any ambiguity about whether disputes involving non-securities are arbitrable under the NASD Code should be resolved in favor of arbitration.

Additionally, from a public policy standpoint, it seems overly technical to limit the ability of customers who believe they have been duped by a NASD member's associated person to only be able to demand arbitration when the financial product qualifies as a security under the Supreme Court's three-part test in *Howey*. Limiting the right of a customer to demand arbitration to such circumstances would not only run afoul to the language of the NASD Code but would also lessen a financial firm's incentive to supervise its agents and representatives in providing investment advice regarding all financial products. *See First Montauk*, 65 F.Supp.2d at 1381 (discussing the role of the NASD arbitration procedures in protecting investors).

### III. *Confirming or Vacating the Arbitration Award*

■ Because this court holds the parties' disputes were in fact arbitrable, the "strong presumption" in favor of the arbitration award applies, *Mutual Fire*, 868 F.2d 52, 56, and the Panel's arbitral ver-

---

**14.** Plaintiffs interestingly assert that once the court finds that the parties agreed to arbitrate the disputes, other potential eligibility requirements involving procedural gateway issues, such as characterization of the investments at issue, should properly be left to the NASD arbitration panel. *See Howsam*, 123

S.Ct. at 592 (holding that procedural, eligibility issues under NASD Rule 10304 are for the arbitrators and not the courts); *Aune*, 253 F.Supp.2d at 845 n. 6 (noting the argument that "the characterization of ETS investments is properly left to the NASD arbitration panel").

dict may only be set aside in "very unusual circumstances," *First Options,* 514 U.S. at 942, 115 S.Ct. 1920. In fact, under the Federal Arbitration Act, the arbitration award may only be vacated on the following narrow grounds:

(1) Where the award was procured by corruption, fraud, or undue means.

(2) Where there was evident partiality or corruption in the arbitrators, or either of them.

(3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). The only other common law ground on which courts may vacate an award is if the arbitrators displayed a "manifest disregard" of the law, *First Options,* 514 U.S. at 942, 115 S.Ct. 1920, meaning the arbitral award was "completely irrational." *Mutual Fire,* 868 F.2d at 56.

Here, defendant seeks to invoke subparagraph (a)(4) of 9 U.S.C. § 10, arguing that the Panel exceeded its powers by denying defendant's motion to dismiss four of the plaintiffs for lack of jurisdiction instead of referring it to a district court to decide the issue. Defendant also argues that the Panel acted in manifest disregard of the law by finding that defendant had a duty to supervise Mr. Henderson, its registered representative.

■ In deciding whether the Panel exceeded its powers or manifestly disregarded the law, this court's review is very limited. *United Transportation Union*

*Local 1589 v. Suburban Transit Corp.,* 51 F.3d 376, 379 (3d Cir.1995) ("District courts have very little authority to upset arbitrators' awards."); *Ludwig Honold Mfg. v. Fletcher,* 405 F.2d 1123, 1127 (3d Cir.1969) (noting that the purpose of arbitration—to avoid litigation—would be frustrated if arbitration awards could be easily overturned). Specifically, courts are not to review the merits of the arbitrators' decision, *see United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 36, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987), arbitrators' interpretations of law, *see Wilko v. Swan,* 346 U.S. 427, 436, 74 S.Ct. 182, 98 L.Ed. 168 (1953), or their interpretation of contractual provisions, *see Bernhardt v. Polygraphic Co.,* 350 U.S. 198, 203 n. 4, 76 S.Ct. 273, 100 L.Ed. 199 (1956).

## A. Did the Panel Exceed Its Power By Not Referring the Issue of Arbitrability to a District Court?

■ Although as noted previously this court disagrees with the Panel's decision that the Panel should decide the question of arbitrability, *see First Options,* 514 U.S. at 944, 115 S.Ct. 1920, this court, like the district court in the Minnesota Proceeding, independently determined that the outcome of the Panel's decision—the four plaintiffs should not have been dismissed—was correct. The question then is whether this case is a situation "[w]here the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a). This court finds that the Panel's denial of defendant's motion did not prevent a mutual, final, and definite award upon the subject matter submitted to be made.

Moreover, the Panel's making the decision as to arbitrability did not harm or prejudice defendant in any way because

defendant had the issue of whether its disputes are arbitrable independently reviewed by two federal courts. Immediately following the Panel's decision on the issue of arbitrability, defendant filed for an injunction in federal court, and the district court in the Minnesota Proceeding decided the arbitrability of the disputes with respect to four of the plaintiffs. *Sowers,* 218 F.Supp.2d at 1116 ("In this case, where the parties have already submitted this question to the arbitration panel, the Court finds it reasonable to allow the matter to proceed in the arbitral forum."). This court also independently reviewed the arbitrability of the claims of all nine of the plaintiffs in this case and found they were arbitrable. Therefore, the exercise of jurisdiction by the Panel over the plaintiffs was determined to be proper by the court, and the fact that the Panel, instead of the court, initially made the jurisdictional ruling does not affect the enforceability of the arbitral award.

This court also finds that the Panel did not act in a "completely irrational" manner by ruling on a motion pending before it, particularly because defendant had the option of not presenting the arbitrability issue to the Panel and of proceeding directly to a district court, which it did after the Panel decided defendant's motion but before the Panel issued its opinion.

**B. Did the Panel Manifestly Disregard the Law?**

 In arguing that the Panel manifestly disregarded the law, defendant is asking this court to find that the Panel committed more that a serious error— "there must be absolutely no support at all in the record justifying the [Panel's] determinations for a court to deny enforcement of an award." *United Transp. Union Lo-*

*cal 1589,* 51 F.3d 376, 379. This court is not to review the merits of the Panel's decision. *See United Paperworkers Int'l Union,* 484 U.S. at 36, 108 S.Ct. 364. It is simply to review whether there is any legal and factual support in the record for the conclusions reached by the Panel. *See United Transp. Union Local 1589,* 51 F.3d at 379.

Defendant argues that the Panel manifestly disregarded the law by finding it liable and specifically, by finding that defendant had a duty to supervise its registered representative. Defendant's argument boils down to the following: the Panel could not hold defendant liable because it did not make any manifestation that Mr. Henderson was its agent; therefore, Mr. Henderson did not have apparent authority to act on defendant's behalf.[15] This argument ignores a few blaring, crucial, undisputed facts—Washington Square entered into a contractual relationship with Mr. Henderson, made him its registered representative by licensing him with the regulatory authorities, and claimed it diligently supervised him. Defendant's argument also does not address the multitude of legal theories that were presented to the Panel, on which the Panel reasonably could have found defendant liable, including controlling person liability, negligence per se, *respondeat superior* doctrine, and inherent agency doctrine. There is support in the record that justifies the Panel's conclusion that defendant was liable for not properly supervising Mr. Henderson. *See Tanoma Mining Co. v. Local Union No. 1269,* 896 F.2d 745, 749 (3d Cir.1990) ("Whatever the merits of the version of agency law propounded by the arbitrator,

**15.** Plaintiffs point out that defendant cites to Minnesota law; however, the arguments presented to the Panel during the arbitration were based upon West Virginia, North Carolina, and federal law—not Minnesota law.

we cannot agree that his award manifested disregard for the law.").

### Conclusion

After consideration of the record and arguments regarding confirmation or vacation of the arbitration award, the court finds that parties' disputes were arbitrable under the NASD Code and that the Panel did not exceed its powers or manifestly disregard the law. Therefore, the arbitration award is hereby confirmed and defendant's counterclaim to vacate the award is hereby denied.

The clerk is to mark this case closed.