**WASHINGTON SQUARE
SECURITIES, INC.,
Plaintiff,**

v.

**James K. AUNE, Howard W. Norman and his wife Virginia M. Norman, Individually and as Trustees of the Howard and Virginia Norman Charitable Trust, and Patricia J. Walker, Defendants.**

**Washington Square Securities,
Inc., Plaintiff,**

v.

**Fred W. Miltz, Jr., Defendant.**

**Nos. 3:02 CV 308–V, 3:02 CV 309–V.**

United States District Court,
W.D. North Carolina,
Charlotte Division.

March 7, 2003.

Stephen D. Allred, Amy R. Langdon, Helms, Mulliss & Wicker, PLLC, Charlotte, Burton w Wiand, Fowler, White Boggs & Banker, Elaine M Rice, Fowler, White, Boggs & Banker, Tampa, FL, for Washington Square, Washington Square Securities, Inc., plaintiff.

Stephen Krosschell, Goodman & Nekvasil, P.A., Joel Goodman, Goodman & Nekvasil, Clearwater, FL, for James K. Aune, Howard W. Norman, Virginia M. Norman, Patricia J. Walker, defendants.

### *ORDER*

RICHARD L. VOORHEES, District Judge.

**THIS MATTER** is before the Court on Defendant's Motion for Reconsideration of the Court's October 8, 2002 Order granting Plaintiff's Motion for Expedited Discovery. (Document # 24) Also pending before the Court is Plaintiff's Motion for Preliminary Injunction, filed on July 26, 2002 (Documents # 1, # 4), and Defendants' Motion to Compel Arbitration, filed October 28,

2002. (Documents # 30, # 31) Upon receipt of the parties' Consent Motion For Continuance Of Preliminary Injunction Hearing, the undersigned postponed the hearing originally scheduled for October 31, 2002. (Documents # 32, # 33)

## I. Factual and Procedural Background

This civil action was precipitated by Defendants' initiation of arbitration proceedings against Plaintiff Washington Square Securities, Inc. ("Washington Square") pursuant to Plaintiff's membership agreement with the National Association of Securities Dealers ("NASD"). (Arbitration Case Nos. 01–05680 & 02–0150) Pursuant to Section 10101 and 10301(a) of the NASD Code of Arbitration Procedure, members of the NASD, such as Plaintiff, agree to arbitrate those disputes, claims or controversies that arise out of or in connection with its business between members or associated persons and "customers." *Id. See* NASD Code of Arbitration Procedure, Sections 10101 and 10301(a).

Defendants invested in ETS Payphones, Inc. ("ETS") and Worldwide Growth Partners, Inc. Series B / Evergreen Security Ltd. ("Evergreen") at various times from late 1997 through 1998. It's undisputed that Richard D. White, a "representative" of Plaintiff Washington Square, was the investment broker for each of these transactions. Defendants allege that as a result of these investments, they collectively sustained losses in excess of $1,000,000. According to Plaintiff Washington Square, White had an independent contractor agreement with Washington Square, which terminated on December 4, 1998. The agreement "allowed [White] to sell only certain, approved products," *not* including Evergreen or ETS.

Plaintiff Washington Square brings the instant action seeking a Declaratory Judgment that Defendants are not "customers" of Plaintiff.[1] In addition to claiming that Defendants are not its "customers," Plaintiff contends that the transactions at issue did not arise out of Plaintiff's business or association with any associated persons, such as Mr. White. Thus, Plaintiff contends that no valid arbitration agreement between Plaintiff and Defendants exists that would require Plaintiff to submit to arbitration. The arbitration proceedings have been voluntarily stayed pending this Court's resolution of Plaintiff's Motion for Preliminary Injunction.

## II. Discussion of the Law

The issue raised by the parties is whether Plaintiff Washington Square, by virtue of its membership in the NASD, has executed a valid agreement to arbitrate that is enforceable by Defendants. *Sydnor v. Conseco Financial Servicing, Corp.*, 252 F.3d 302, 305 (4th Cir.2001)("initial inquiry

---

1. A review of the relevant case law reveals that the Fourth Circuit has not addressed this issue. There is a split of authority among both the circuit courts and district courts regarding interpretation of the term "customer" and Section 10301(a). *Compare John Hancock Life Insurance Co. v. Wilson*, 254 F.3d 48 (2nd Cir.2001)(despite absence of separate arbitration agreement between NASD member and investors, dispute between NASD member and investors was arbitrable where investors were clients of member's registered representative rather than NASD member); *and Investors Capital Corp.*

*v. Brown*, 145 F.Supp.2d 1302, 1305 (M.D.Fla.2001)(whether customers of an associated person were also the broker-dealer's customers is a material issue of fact which entitles the plaintiff to a jury trial to determine the nature of the relationship). The majority view is stated in the *John Hancock* opinion, as well as a Sixth Circuit opinion, holding that customers of the NASD member firm's representative / associated person can require the NASD member to submit to arbitration. *Vestax Securities Corporation v. McWood*, 280 F.3d 1078 (6th Cir.2002).

is whether the parties agreed to arbitrate their dispute"). However, for purposes of resolving Defendant's motion for reconsideration, the Court must also decide whether the presumption in favor of arbitration applies when considering this threshold question, and whether discovery is necessary in making this determination. For the reasons stated herein, the Court finds that the presumption does not apply and discovery is not, in fact, necessary. Upon reconsideration, the Court *vacates* its earlier Order granting Plaintiff's motion for expedited discovery.

■ Contrary to Defendants' contention that the presumption in favor of arbitrability is relevant to the Court's present inquiry, the presumption that a dispute is subject to arbitration cannot apply if there is no agreement to arbitrate.[2] The rationale is explained as follows: "[I]f the general presumption in favor of arbitration were applied to the question of arbitrability, it 'might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide.'" *John Hancock,* 254 F.3d at 55 (*citing First Options of Chicago v. Kaplan,* 514 U.S. 938, 945, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)); *AT&T Technologies, Inc. v. Communications Workers,* 475 U.S. 643, 648–49, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)("arbitration is a matter of contract and a party cannot be required to submit to arbitration [in] any dispute

which he has not agreed to submit.") In other words, despite federal policy favoring arbitration, "Congress did not intend for the FAA to force parties who had not agreed to arbitrate into a non-judicial forum, and therefore, federal courts must first decide whether the parties entered into an agreement to arbitrate their disputes." *Sydnor,* 252 F.3d at 302; *Hornor, Townsend & Kent, Inc. v. Hamilton,* 218 F.Supp.2d 1369 (N.D.Ga.2002)(because parties never actually signed a formal agreement to arbitrate, presumption did not apply). However, Defendants need not rely on the presumption and policies favoring arbitration.

■ In determining whether the parties agreed to arbitrate, the Court turns to North Carolina contract law.[3] *Sydnor,* 252 F.3d at 305. Under North Carolina law, Defendants can be considered third-party beneficiaries of Plaintiff's NASD membership agreement. *LSB Financial Services, Inc. v. Harrison,* 144 N.C.App. 542, 548 S.E.2d 574 (2001).[4] To establish a claim based on the third-party beneficiary contract doctrine, Defendants must demonstrate "1) the existence of a contract between two other persons; 2) that the contract was valid and enforceable; and 3) that the contract was entered into for plaintiff's direct, and not incidental, benefit." *Id.* at 548, 548 S.E.2d 574 n. 1 (*citing United Leasing Corp. v. Miller,* 45 N.C.App. 400, 405–6, 263 S.E.2d 313, 317

---

**2.** Defendants contend that the question is actually one of "scope" and that the existence and enforceability of the agreement to arbitrate is not at issue. While some courts frame the issue in terms of scope as Defendants do, this Court reaches the same outcome but under a slightly different analysis.

**3.** Consistent with the parties' reliance on state law for basic contract principles, as well as Plaintiff's allegation that the brokerage transactions occurred in North Carolina, the Court looks to North Carolina law for guidance.

**4.** Defendants cite numerous cases supporting an agency theory of recovery even though its own expert, Richard E. Speidel, opines that agency law does not apply and need not be resorted to in light of the NASD and applicable regulations. (Defendants' Exhibit 11); *See Oppenheimer & Co. v. Neidhardt,* Fed. Sec. L. Rep. (CCH) ¶ 98, 224 (S.D.N.Y. May 4, 1994)(customers are third-party beneficiaries of brokerage firm's obligation to follow NASD rules); *Scobee Combs Funeral Home v. E.F.Hutton & Co.,* 711 F.Supp. 605, 607 (S.D.Fla.1989)(same).

(1980)). At a minimum, by virtue of its NASD membership, Plaintiff agreed to arbitrate disputes with its "customers" so a contract contemplating arbitration certainly exists. Likewise, Plaintiff does not question the validity of the NASD arbitration provision—only whether it extends to "customers" of its "associated persons." Thus, the Court need only determine whether the NASD arbitration provisions are required, and thereby entered into for the direct benefit of investors such as the Defendants. A person is a direct beneficiary of a contract if the contracting parties intended to confer a legally enforceable benefit on that person. *Wood v. Guilford County*, 143 N.C.App. 507, 513, 546 S.E.2d 641 (2001), *rev'd in part on other grounds*, 355 N.C. 161, 558 S.E.2d 490 (2002). In determining the intent of the contracting parties as to whether plaintiff was a third-party beneficiary, the court should consider the circumstances surrounding the transaction as well as the actual language of the contract. *Holshouser v. Shaner Hotel Group Properties One Ltd. Partnership*, 134 N.C.App. 391, 398, 518 S.E.2d 17 (1999), *aff'd*, 351 N.C. 330, 524 S.E.2d 568 (2000).

Both the circumstances surrounding the transaction and the actual language of the NASD provisions favor the interpretation of Section 10301(a) suggested by Defendants. While there is no evidence of a "traditional" customer relationship between Plaintiff and Defendants, there certainly is evidence that a "traditional" customer relationship existed between White and the Defendants. Defendants' failure to open accounts with Plaintiff is irrelevant. *Washington Square Securities v. Sowers*, 218 F.Supp.2d 1108

(D.Minn.2002)(*citing Vestax*, 117 F.Supp.2d at 657.) In addition, Plaintiff's obligation here stems from its decision to join the NASD and abide by the NASD Code of Arbitration Procedure. Notably, Plaintiff doesn't dispute that the goal of the NASD is to "promote and enforce just and equitable principles of trade and business, to maintain high standards of commercial honor and integrity among members of the NASD, to prevent fraudulent and manipulative acts and practices, [and] ... *to protect investors and the public interest.*" (Art. XI, NASD By–Laws / Defendants' Exhibit 9) Thus, accepting Plaintiff's argument and proposed narrow definition of the term "customer" would be wholly inconsistent with these goals.

The NASD's intent is also evidenced by White's U–4 Application for Securities Industry Registration, which imposes an arbitration obligation upon both White and Plaintiff Washington Square.[5] (White Form U–4, ¶¶ 5, 9 / Defendants' Exhibit 4:4) The transactions at issue herein occurred subsequent to White's registration with the NASD as an agent and general securities representative of Plaintiff Washington Square in North Carolina as well as other states. As explained in *LSB Financial Services*, a firm that reaps the benefits of a broker's registration with the NASD via Form U–4 should not be able to avoid its burdens. *LSB Financial Services, Inc.*, 144 N.C.App. at 548, 548 S.E.2d 574. Here, Plaintiff asserts that it did not reap any benefit by way of commissions as a result of Defendants' investments. Even so, the regulatory scheme from which Form U–4 arose, and the unambiguous language of White's U–4, makes clear that

---

**5.** The relevant paragraphs of White's U–4 Application, provide that:

5. I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person ... that is required to be arbitrated

under the rules, constitutions, or by-laws of the [NASD] ...

9. I understand and certify that the representations in this form apply to all employers with whom I seek representation ...

the arbitration agreement and the NASD Code of Arbitration establish certain classes of individuals-member firms of the NASD, customers, etc., who ultimately benefit from this type of agreement with the NASD. *Id.* at 547, 548 S.E.2d 574 (*citing In re Prudential,* 133 F.3d at 230.)) Therefore, Defendants should be able to enforce the NASD arbitration provision against Plaintiff as third-party beneficiaries.

The language of Section 10301(a) also supports Defendants' position. According to Rule 10301(a) of the NASD Code of Arbitration Procedure,

> Any dispute, claim, or controversy . . . between a customer and a member and / or associated person arising in connection with the business of such member or in connection with the activities of such associated persons shall be arbitrated under this Code, as provided by any duly executed and enforceable written agreement or upon the demand of the customer.

Thus, a customer or investor does not necessarily have to demonstrate that it dealt directly with the NASD member in order to demand arbitration. *Hornor, Townsend & Kent, Inc.,* 218 F.Supp.2d at 1376. Rather, the direct dealings with an "associated person" is sufficient. *Id.; John Hancock,* 254 F.3d at 59. Given the plain language of the NASD provisions, which provides ample support for the Court's ruling, and the assurances it is intended to provide investors, namely, that they will have an avenue for redress against the principal member firm as well as its representatives, the undersigned concludes that Defendants, as direct customers of Plaintiff's representative, are among those intended to be direct beneficiaries of the NASD arbitration provision.

■ Moreover, North Carolina's agency principles, which are also applicable, are sufficient to compel arbitration. *LSB Financial Services,* 144 N.C.App. at 547–49, 548 S.E.2d 574 (*citing In re Prudential Ins. Co. of America Litigation,* 133 F.3d 225, 229 (3rd Cir.1998)(recognizing that "a variety of nonsignatories of arbitration agreements have been held to be bound by such agreements under ordinary common law contract and agency principles")). "It is well established in the federal courts than an arbitration agreement may be enforced by or against a nonsignatory party under traditional principles of agency or contract law." *Id.* at 549, 548 S.E.2d 574 (*citing Stone v. Pennsylvania Merchant Group, Ltd.,* 949 F.Supp. 316, 320 (E.D.Pa. 1996)). While the undersigned does not attempt to address the merits of Defendants' claims, generally, an agent who contracts on behalf of a disclosed principal is not liable in an action by a third party for an alleged breach of that contract where the agent has acted fully within his authority, *or within its apparent scope,* and contracted only in that capacity. *Walston v. R.B. Whitley & Co.,* 226 N.C. 537, 540, 39 S.E.2d 375 (1946)(*citing* 3 C.J.S., Agency, 215).

■ In this case, Defendants aver that White identified himself as a Washington Square broker prior to investing, that White was Washington Square's registered representative, that Defendants believed that White was being supervised by Plaintiff Washington Square and that Plaintiff was approving and reviewing all of the proposed investments offered by White, that White assured Defendants that the ETS investments were "safe" investments, that Defendants purchased investments from White in reliance upon the representation that White was a broker for Washington Square, a reputable brokerage firm, and that Defendants at all relevant times believed they were customers of both White and Plaintiff Washington Square. (See Affidavits / Defendants' Exhibit 1)

Despite Plaintiff's allegation that the affidavits presented are "untested," and that White was not authorized to sell ETS investments, there is ample evidence before the Court to find that White acted with apparent authority in the complained of transactions. Thus, Plaintiff's claim that Mr. White acted outside of his authority is inconsequential unless the investors knew that his agreement with Washington Securities did not authorize him to sell ETS or Evergreen securities.[6] There has been no evidence presented to this effect.

Other courts have arrived at the same conclusion, finding that investors who were customers of an "associated person" became customers of the NASD member by virtue of their relationship with the associated person. *Hornor, Townsend & Kent, Inc.*, 218 F.Supp.2d at 1377, n. 3 (*citing WMA Sec., Inc. v. Ruppert*, 80 F.Supp.2d 786, 789 (S.D.Ohio 1999) and *Vestax Sec. Corp. v. Skillman*, 117 F.Supp.2d 654, 657 (N.D.Ohio 2000)(same))[7]; *Summit Brokerage Services, Inc. v. Cooksley*, 2002 WL 31478190 (Fla.Cir.Ct. Nov.6 2002). Such

an interpretation is consistent with the relatively broad definition of "customer" for purposes of Rule 10301. *Id.* at 1383; *John Hancock*, 254 F.3d at 59–60 (noting that the NASD defines "customer" broadly, excluding only "a broker or dealer.") Although Plaintiff attempts to distinguish the *John Hancock* case and others, claiming that it has provided the Court with the extrinsic evidence relevant to the NASD definition of customer previously lacking, the Court disagrees with this proposition.[8] *Sowers*, 218 F.Supp.2d 1108. For the reasons stated, there is no need to conduct any discovery, albeit limited, where it is clear that the instant dispute is, in fact, arbitrable.

In light of the above analysis, the Court will also deny the Plaintiff's request for injunctive relief and grant Defendants' motion to compel arbitration. Due to the wealth of information provided to the Court in support and in opposition to the pending motions, there is no need to conduct a hearing.[9] Plaintiff simply cannot establish a likelihood of success on the

---

**6.** In support of its argument that White acted outside of his authority, Plaintiff now also claims that the ETS investments at issue are not securities. Plaintiff cites an Eleventh Circuit opinion for this proposition. *Securities and Exchange Comm'n v. ETS Payphones, Inc.*, 300 F.3d 1281, 1285 (11th Cir.2002). However, Defendants respond by pointing out that securities regulators in North Carolina, where the ETS investments in this case were sold, have determined that ETS investments are securities, and that the North Carolina securities regulators' finding is supported by decisions in at least 15 other states. Defendants also claim, and the undersigned agrees, that this question need not be decided in order to determine arbitrability. (Defendants' Exhibit 10) Rather, the characterization of the ETS investments is properly left to the NASD arbitration panel. *See generally, Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 123 S.Ct. 588, 592, 154 L.Ed.2d 491 (2002)(arbitrator's role to determine procedural ques-

tions that arise out of the dispute and bear on final disposition in addition to deciding questions regarding waiver, delay, and other defenses to arbitrability).

**7.** Plaintiff complains that in *WMA v. Ruppert*, the district court allowed Plaintiff's request for discovery even though it later compelled arbitration. However, Defendants' counsel points out that he did not object to limited discovery in *WMA v. Ruppert* for reasons unique to that litigation.

**8.** The Court need not resort to extrinsic evidence when the language of the NASD Arbitration Code provisions are not ambiguous. Furthermore, the extrinsic evidence cited by Plaintiff is not dispositive of this issue.

**9.** To date, the parties have been unable to agree on a date and time for a hearing to consider Plaintiff's motion for preliminary injunction. The dates discussed most recently were for sometime in March 2003.

merits and is, therefore, not entitled to injunctive relief.

**IT IS, THEREFORE, ORDERED THAT**:

1) Defendant Walker's Motion for Protective Order and To Quash Deposition Notices are both **DENIED as moot** in that they were withdrawn by Defendant;

2) Defendants' Motion for Reconsideration is **GRANTED**. Accordingly, the Court's earlier Order granting expedited discovery is hereby **VACATED**;

3) Plaintiff's Motion for Preliminary Injunction is **DENIED**;

4) Defendants' Motion to Compel Arbitration is **GRANTED**; and

5) Plaintiff's action seeking Declaratory Judgment is hereby **DISMISSED WITH PREJUDICE**. (The Clerk of Court is reminded that this dismissal is to both Civil Case Nos. 3:02CV308–V and 3:02CV309–V.)

JUDGMENT IN A CIVIL CASE

DECISION BY COURT. This action having come before the Court by Motion and a decision having been rendered;

IT IS ORDERED AND ADJUDGED that Judgment is hereby entered in accordance with the Court's March 7, 2003 Order.