**IFG NETWORK SECURITIES, INC., Plaintiff,**

v.

**Rua L. KING, individually, and as personal representative of the Estate of Rex T. King, Defendant.**

**No. 6:03CV103–ORL–22KRS.**

United States District Court, M.D. Florida, Orlando Division.

Sept. 3, 2003.

Burton Wiand, Elaine Rice, Fowler, White, Gillen, Boggs, Villareal & Banker, Tampa, FL, Counsel for Plaintiff/Brokerage Firm, IFG Network Securities, Inc.

Joel A. Goodman, Stephen Krosschell, FL, Goodman & Nekvasil, P.A., Clearwater, Counsel for Defendant/Investor, Rua L. King.

**ORDER**

CONWAY, District Judge.

## I.  INTRODUCTION

This cause comes before the Court for consideration of the Plaintiff's, IFG Network Securities, Inc. ("IFG Securities"), Motion for Preliminary and Permanent Injunction (Doc. No. 2, filed Jan. 27, 2003), and the Defendant's, Rua L. King, individually, and as personal representative of the Estate of Rex T. King ("Defendant"), Motion to Compel Arbitration (Doc. No. 15, filed Mar. 7, 2003). Oral argument on the parties' motions was held on March 27, 2003 (Doc. No. 34), and United States

Magistrate Judge Karla R. Spaulding issued a Report and Recommendation (R & R) on June 6, 2003 (Doc. No. 48). In her memorandum opinion, Judge Spaulding recommends that the undersigned judge deny IFG Securities' Motion for Preliminary and Permanent Injunction (Doc. No. 2). In addition, she recommends that this Court deny without prejudice the Defendant's Motion to Compel Arbitration (Doc. No. 15) pending the outcome of a jury trial. *See* Doc. No. 48 at 20–21. The parties filed Objections (Docs. No. 49 & 50) to Judge Spaulding's R & R on June 16, 2003 and June 20, 2003, respectively, and responses to the objections (Docs. No. 51 and 52) on June 30, 2003 and July 7, 2003, respectively. Having reviewed the R & R, the parties' objections thereto, and the responses to the objections, this Court **APPROVES IN PART** and **DISAPPROVES IN PART** Judge Spaulding's recommendations. The R & R is **APPROVED** insofar as it recommends that this Court deny IFG Securities' Motion for Preliminary and Permanent Injunction. The R & R is **DISAPPROVED** insofar as it recommends that this Court deny the Defendant's Motion to Compel Arbitration pending the outcome of a jury trial.

1. *See* Complaint (Doc. No. 1), ¶ 4 at 2.

2. *See id.*, ¶ 7 at 2; *see also* Answer (Doc. No. 14), ¶ 7 at 2.

3. *See id.*, ¶ 5 at 2; *see also* Answer (Doc. No. 14), ¶ at 5 at 1.

4. *See generally* Doc. No. 57.

5. *See id.*

6. *See generally* Complaint (Doc. No. 1).

7. *See* Supplemental Appendix in Support of Plaintiff IFG Network Securities, Inc.'s Motion for Preliminary Injunction and in Opposition to Defendants' Motion to Compel Arbitration (Doc. No. 24), Declaration of Anthony V. Micciche (Ex. 1.), ¶ 2 at 1; Complaint (Doc. No. 1), ¶ 23 at 6; Answer (Doc. No. 14), ¶ 23 at 3.

## II. BACKGROUND

The Plaintiff, IFG Securities, is a securities broker organized under the laws of Florida with its principal place of business located in Georgia.[1] It is a member of the National Association of Securities Dealers (NASD).[2] The Defendant, Rua L. King, is a citizen of Florida,[3] and is the personal representative of the Estate of Rex T. King,[4] her late husband.[5] This action concerns the existence of an agreement to arbitrate between the Plaintiff and the Defendant in connection with the sale of securities.[6]

Following the advice of Anthony Micciche, a registered representative of IFG securities[7], the Defendant entered into a trust agreement with Intrados, S.A. ("Intrados"), a Panamanian company.[8] Although the trust agreement accorded Intrados broad powers to invest trust assets, in a "Letter of Wishes for Trust" the Defendant indicated a desire to invest in government securities.[9]

On May 2, 1999, the Defendant tendered two checks totaling $45,800 to Intrados.[10] Intrados, in turn, invested that money in Evergreen Securities, Ltd. ("Evergreen Securities").[11] Evergreen Securities is

8. *See generally* Appendix in Support of Plaintiff IFG Network Securities, Inc.'s Motion for Preliminary Injunction, Volume I of II, Ex. C; *see also* Complaint (Doc. No. 1), ¶ 14 at 4; Answer (Doc. No. 14), ¶ 14 at 2.

9. *See generally* Appendix in Support of Plaintiff IFG Network Securities, Inc.'s Motion for Preliminary Injunction, Volume I of II, Ex. E. In relevant part, the Letter of Wishes provides that "I hope that the trust" will invest the assets of the trust in U.S. Gov't Agency Securities."

10. *See id.* at Ex. D.

11. *See* Supplemental Appendix in Support of Plaintiff IFG Network Securities, Inc.'s Motion for Preliminary Injunction and in Opposition to Defendants' Motion to Compel Arbi-

now in bankruptcy, and the Defendant lost her entire investment. In connection with his association with Evergreen Securities, the Plaintiff's registered representative, Anthony Micciche, pleaded guilty to the sale of unregistered securities in violation of 15 U.S.C. 77e(a).[12]

According to the Defendant, at all relevant times herein she believed that Anthony Micciche was a licensed representative of IFG Securities.[13] She also claims that she relied on his affiliation with IFG in making the investment at issue.[14] On that subject, the Defendant submitted a copy of a business card which Anthony Micciche allegedly provided her in the course of their business dealings.[15] On its face, the business card indicates that Anthony Micciche is affiliated with IFG Securities.[16]

Micciche counters that he never represented he was acting on behalf of IFG Securities in this transaction.[17] In that regard, his affidavit states as follows: "I did not provide the [Defendant] with a business card or correspond with the [Defendant] on letterhead referring to IFG ... I did not provide the [Defendant] with any documents referring to IFG ... or indicating that IFG ... was involved with

their offshore trust, its trustee ... or the Evergreen Security Ltd. investment the trustee made in their trust." [18]

At any rate, it is undisputed (1) that Anthony Micciche never reported his activities involving the Defendant, Intrados, or Evergreen Securities to IFG Securities; (2) that IFG Securities did not approve of the sale of Evergreen Securities by its representatives; (3) that IFG Securities does not have any record of the purchase of this investment by or for the Defendant; (4) that the Defendant never opened an account with IFG Securities; (5) that the Defendant does not have any agreement with IFG Securities; and (6) that IFG Securities did not receive or disburse funds for this transaction.[19]

On September 4, 2002, the Defendant initiated an arbitration proceeding against IFG Securities in connection with the Evergreen Securities investment.[20] In her statement of claims, the Defendant charges: (1) violations of federal securities laws; (2) violations of the Florida Securities and Investor Protection Act; (3) breach of contract; (4) common law fraud; (5) breach of fiduciary duty; and (6) negligence and/or gross negligence.[21] Inas-

tration (Doc. No. 24), Declaration of Anthony V. Micciche (Ex. 1.), ¶ 14 at 2–3.

**12.** *See United States of America v. Anthony Vincent Micciche*, Case No. 8:02–cr–138–T–26TBM at Doc. No. 11 (M.D.Fla. May 24, 2002).

**13.** *See* Defendants' Notice of Filing Documents in Support of their Motion to Compel Arbitration and in Opposition to Plaintiff's Motion for Preliminary and Permanent Injunction (Doc. No. 18), Declaration of Rua L. King (Ex. 1), ¶¶ 3 & 6 at 2–3.

**14.** *See id.*

**15.** *See* Declaration of Rua L. King (Doc. No. 26), ¶ 1 at 1.

**16.** *See* Doc. No. 26 at 3.

**17.** *See* Supplemental Appendix in Support of Plaintiff IFG Network Securities, Inc.'s Motion for Preliminary Injunction and in Opposition to Defendants' Motion to Compel Arbitration (Doc. No. 24), Declaration of Anthony v. Micciche (Ex. 1), ¶ 4 at 1.

**18.** *Id.*, ¶ 6 at 2.

**19.** *See id.*, ¶ 15 at 3; *see also* Appendix in Support of Plaintiff IFG Network Securities, Inc.'s Motion for Preliminary Injunction, Volume I of II, Declaration of David Ledbetter (Ex. B), ¶¶ 2–11 at 1–2.

**20.** *See* Complaint (Doc. No. 1), ¶ 9 at 2–3; *see also* Answer (Doc. No. 14), ¶ 9 at 2.

**21.** *See id.*, ¶ 9 at 2–3; *see also* Answer (Doc. No. 14), ¶ 9 at 2.

much as there is no written agreement to arbitrate between the parties, the Defendant seeks arbitration under the NASD Code of Arbitration Procedure, which compels IFG Securities to arbitrate, as a condition of its membership in the NASD, upon the demand of a customer.[22]

In relevant part, the NASD Code of Arbitration Procedure provides as follows:

Any dispute, claim, or controversy eligible for submission under the Rule 10100 Series *between a customer and a member and/or associated person arising in connection with the business of such member or in connection with the activities of such associated persons* shall be arbitrated under this Code ... upon the demand of the customer.

NASD Code of Arbitration Procedure Rule 10301(a) (emphasis added).

The Rule 10100 series provides, in pertinent part, as follows:

This Code of Arbitration Procedure is prescribed and adopted ... for the arbitration of any dispute, claim, or controversy *arising out of or in connection with the business of any member* of the Association, or arising out of the employment or termination of employment of associated person(s) with any member.

NASD Code of Arbitration Procedure Rule 10101 (emphasis added).

On January 27, 2003, IFG Securities filed the instant case against the Defendant seeking a declaratory judgment that there is no valid agreement to arbi-trate between IFG Securities and the Defendant.[23] On that topic, the Complaint recites that the Defendant's arbitration action exceeds the scope of the NASD Arbitration Procedure because IFG Securities "only agreed to arbitrate those disputes, claims or controversies that *arise out of* or *in connection with* its business between members or associated persons and *customers.*"[24] The Complaint also seeks preliminary and permanent injunctive relief to stay the pending arbitration proceedings.[25] In response to that action, the Defendant filed a Motion to Compel Arbitration.[26]

On March 11, 2003, the undersigned judge referred this matter to Magistrate. Spaulding for a R & R.[27] Following that order, Judge Spaulding held a hearing on March 27, 2003, and issued an R & R on June 6, 2003.[28] In the R & R, Judge Spaulding recommends denying IFG Securities' motions for preliminary and permanent injunctive relief.[29] In addition, she recommends denying the Defendant's Motion to Compel Arbitration because "there is disputed evidence on the question of whether Micciche told the [Defendant] that he was affiliated with IFG, or gave [her] other indicia of his affiliation with IFG" which precludes "a finding at this juncture that the [Defendant] [is][a] ... customer[ ] of IFG within the meaning of Rule 10301."[30] On that point, Judge Spaulding recommends that the undersigned judge conduct a jury trial on the issue of the Defendant's customer status.[31] Both par-

---

**22.** *See id.,* ¶ 7 at 2; *see also* Answer (Doc. No. 14), ¶ 7 at 2.

**23.** *See generally* Complaint (Doc. No. 1), ¶ 1 at 1.

**24.** *Id.,* ¶ 30 at 8 (emphasis in the original) (internal citations omitted).

**25.** *See generally id.*

**26.** *See generally* Docs. No. 15 and 20.

**27.** *See generally* Doc. No. 21.

**28.** *See generally* Docs. No. 34 & 48.

**29.** *See id.* at 21.

**30.** *Id.* at 21.

**31.** *See id.*

ties now object to the recommendations contained in the R & R.[32]

## III. ASSIGNMENTS OF ERROR

In their Objections (Docs. No. 49 and 50) to Magistrate Judge Spaulding's Report and Recommendation (Doc. No. 48), the parties assign five points of error.

The Defendant contends that the Magistrate Judge erred in failing to find, as a matter of law, that the Defendant is a customer entitled to force IFG Securities into arbitration.[33]

The Plaintiff, on the other hand, contends that Judge Spaulding erred (1) in finding that the instant dispute arose out of or in connection with the business of the Plaintiff; (2) in denying the Plaintiff's motion for a preliminary injunction, or alternatively, in failing to grant a stay of the upcoming arbitration; (3) in finding that the Defendant has standing to pursue this litigation; and (4) in presupposing disputed facts with respect to statements allegedly made by Anthony Micciche to the Defendant without affording the parties sufficient discovery.[34]

## IV. STANDARD OF REVIEW

When a magistrate judge issues a report and recommendation, the district judge must make a *de novo* determination of the findings and/or recommendations to which any party objects. *See* 28 U.S.C. § 636(b)(1)(C) (2003). "This requires that the district judge 'give fresh consideration to those issues to which specific objection has been made by a party.'" *Lacy v. Apfel,* 2000 WL 33277680, *1, 2000 U.S. Dist. Lexis 21437, *2–3 (M.D.Fla. Oct. 20, 2000) (quoting *Jeffrey S. v. State Bd. of Educ.,* 896 F.2d 507, 512 (11th Cir.1990)). "In the absence of specific objections, there is no requirement that a district

judge review factual findings *de novo.*" *Lacy,* 2000 WL 33277680, *1, 2000 U.S. Dist. Lexis 21437 at *3 (emphasis added) (internal citation omitted). However, regardless of whether objections are filed, a district judge must review a magistrate's legal conclusions *de novo. See id.* After reviewing a report and recommendation, objections, and responses thereto, the district judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. *See* § 636(b)(1)(C).

## V. LEGAL ANALYSIS

### A. Generally

It is well established that the Federal Arbitration Act (FAA) favors arbitration. *Brown v. ITT Consumer Fin. Corp.,* 211 F.3d 1217, 1222 (11th Cir.2000) ("the FAA creates a presumption in favor of arbitrability") (internal citations omitted); *Wheat, First Sec., Inc. v. Green,* 993 F.2d 814, 817 (11th Cir.1993) ("in enacting § 2 of the Federal Arbitration Act ... Congress declared a national policy favoring arbitration") (internal citations and quotations omitted).

It is equally well established, however, that "a party cannot be required to submit to arbitration a dispute that it has not agreed to arbitrate." *Road Sprinkler Fitters Local Union No. 669 v. Independent Sprinkler Corp.,* 10 F.3d 1563, 1567 (11th Cir.1994), *reh'g, en banc, denied,* 20 F.3d 1176 (1994), *cert. denied,* 513 U.S. 868, 115 S.Ct. 189, 130 L.Ed.2d 122 (1994) (internal citations omitted); *Wheat, First Sec., Inc.,* 993 F.2d at 817 ("simply put, parties cannot be forced to submit to arbitration if they have not agreed to do so") (internal citation omitted).

---

**32.** *See generally* Docs. No. 49 and 50.

**33.** *See generally* Doc. No. 49.

**34.** *See generally* Doc. No. 50.

■ The scope of this Order considers only whether the parties in this instance agreed to arbitrate this dispute. *See AT & T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 656, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) ("the question of arbitrability ... is undeniably an issue for judicial determination. Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator") (internal citations omitted). If the parties agreed to arbitrate, then the other issues raised for this Court's review are moot and require no discussion. *See* 9 U.S.C. § 4 ("The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement"). If the parties failed to reach an agreement to arbitrate, however, awarding injunctive relief to prevent arbitration is appropriate.

**B. The NASD Code is a Written Agreement to Arbitrate**

■ Although the Eleventh Circuit Court of Appeals has never addressed the issue,[35] it is well settled that the NASD obligates its members to arbitrate disputes with investors even in the absence of a direct transactional relationship or a written agreement incorporating the NASD Code of Arbitration Procedure. *See Vestax Sec. Corp. v. McWood*, 280 F.3d 1078, 1081 (6th Cir.2002) ("The NASD Code of Arbitration Procedure ... creates the right of parties to compel an NASD-member firm to arbitrate even in the absence of a direct transactional relationship with the firm"); *Hornor, Townsend & Kent, Inc. v. Hamilton*, 218 F.Supp.2d 1369, 1375 (N.D.Ga.2002) ("The NASD Code of Arbitration Procedure binds its members to arbitrate a wide variety of claims with a broad range of claimants, including claimants that may have no direct relationship with the member") (internal citation omitted); *First Montauk Sec. Corp. v. Four Mile Ranch Dev. Co.*, 65 F.Supp.2d 1371, 1378 (S.D.Fla.1999) ("It is now fairly established that a person or entity's contractual agreement with the ... NASD which obligates the person/entity to arbitrate according to ... NASD arbitration provisions may be enforced by a non-party to the agreement—even though there is no *direct* agreement between the party seeking to avoid the arbitration and the party seeking to avoid it [sic]") (internal citation omitted) (emphasis in the original).

■ However, before a NASD member may be compelled to arbitrate with an investor in such a situation, courts require that an investor's claim satisfy two conditions.[36] First, the claim must involve a dispute between either a NASD-member and a customer, or an associated person of

---

35. In *Wheat, First Sec., Inc. v. Green*, 993 F.2d 814, 820 (11th Cir.1993), the Eleventh Circuit Court of Appeals refrained from answering the "tantalizing question" of whether the NASD Code of Arbitration Procedure is sufficient in and of itself to compel the arbitration of disputes between NASD members and customers.

36. The two condition test was derived from NASD Code of Arbitration Procedure Rule 10301(a), which provides, in pertinent part, as follows:

Any dispute, claim, or controversy eligible for submission under the Rule 10100 Series *between a customer and a member and/or associated person arising in connection with the business of such member or in connection with the activities of such associated persons* shall be arbitrated under this Code ... upon the demand of the customer.
NASD Code of Arbitration Procedure 10301(a) (emphasis added).

the NASD-member and a customer. Second, the dispute must arise in connection with the business activities of the member or in connection with the activities of the associated person. *See Vestax,* 280 F.3d at 1081; *John Hancock Life Ins. Co. v. Wilson,* 254 F.3d 48, 58 (2d Cir.2001) (same); *Hornor, Townsend & Kent, Inc.,* 218 F.Supp.2d at 1375 (same); 1 Thomas H. Oehmke, Commercial Arbitration § 28:14 (2003).

This Court will analyze each of these conditions in the context of the Defendant's claim.

### C. The Dispute is Between a NASD-member and a Customer or an Associated Person and a Customer

■ To satisfy the first condition of the NASD arbitration requirement, the claim must involve a dispute between a NASD-member and a customer or an associated person of the NASD-member and a customer.

■ In this instance, it is undisputed that IFG Securities is a NASD member. *See* Complaint (Doc. No. 1), ¶ 7 at 2; *see also* Answer (Doc. No. 14), ¶ 7 at 2. It is also undisputed that at all relevant times herein Anthony Micciche was an associated person of IFG Securities.[37] *See* Declara-

tion of Anthony V. Micciche (Doc. No. 24, Ex. 1), ¶ 2 at 1; Complaint (Doc. No. 1), ¶ 23 at 6; Answer (Doc. No. 14), ¶ 23 at 3. Accordingly, this Court need only consider whether the Defendant was a customer of IFG Securities and/or Anthony Micciche, which is "determined as of the time of the events providing the basis for the allegations." *Wheat, First Sec., Inc. v. Green,* 993 F.2d 814, 820 (11th Cir.1993).

In the NASD Code of Arbitration Procedure the term "customer" is defined as anyone but a broker or dealer. *See* NASD Code of Arbitration Procedure, Rule 0120(g).[38] Following this broad definition, it is axiomatic that the Defendant was a customer of Anthony Micciche; he provided the Defendant with investment advice, and she responded by depositing $45,800 into a trust account where her money was invested in securities.

However, it is unclear as to whether the Defendant was a customer of IFG Securities. As stated previously, the Defendant never entered into an agreement with or held an account at IFG Securities, and IFG Securities never received or disbursed any funds in connection with the transaction. Moreover, Anthony Micciche never reported his activities involving Evergreen

---

**37.** According to Article I of the NASD By-laws a "person associated with a member" or "associated person of a member" means: (1) a natural person who is registered or has applied for registration under the Rules of the Association; (2) a sole proprietor, partner, officer, director, or branch manager of a member, or other natural person occupying a similar status or performing similar functions, or a natural person engaged in the investment banking or securities business who is directly or indirectly controlling or controlled by a member, whether or not any such person is registered or exempt from registration with the NASD under these By–Laws or the Rules of the Association; and (3) for purposes of Rule 8210, any other person listed in Schedule A of Form BD of a member.
NASD Code at By–Laws, Art. I(dd).

**38.** Although inapplicable, other provisions of the NASD rules define the term "customer" differently. For example, Rule 2270, Disclosure of Financial Condition to Customers, provides that the term customer means "any person who, in the regular course of such member's business, has cash or securities in the possession of such member." Likewise, Rule 2520, Margin Requirements, provides that the term customer means "any person for whom securities are purchased or sold or to whom securities are purchased or sold whether on a regular way, when issued, delayed or future delivery basis. It will also include any person for whom securities are held or carried and to or for whom a member organization extends, arranges or maintains any credit."

Securities—an investment which IFG Securities did not approve of—to IFG Securities. *See* Declaration of Anthony V. Micciche (Doc. No. 24, Ex. 1), ¶ 15 at 3; *see also* Declaration of David Ledbetter (Appendix in Support of Plaintiff IFG Network Securities, Inc.'s Motion for Preliminary Injunction; Volume I of II) (Ex. B), ¶¶ 2–11 at 1–2.

Instead, it is apparent that the only connection between the Defendant and IFG Securities is Anthony Micciche; a renegade broker who allegedly represented that he was acting on behalf of IFG Securities when he provided the Defendant with investment advice. For this reason, this Court must determine whether the NASD Code of Arbitration Procedure affords an investor the right to compel a NASD member into arbitration solely by virtue of the investor's customer relationship with an associated person of the NASD member.

In *John Hancock Life Ins. Co. v. Wilson*, 254 F.3d 48 (2d Cir.2001), the Court of Appeals for the Second Circuit considered that very question. In that case, investors sought to compel John Hancock into arbitration in connection with the purchase of fraudulent promissory notes, but the only contact between the investors and John Hancock was the associated person who peddled the notes—Frank P. Fucilo ("Fucilo"). *See id.* at 51. There was no evidence that Fucilo represented to the investors that he was affiliated with John Hancock or that the investors knew that Fucilo was affiliated with John Hancock. *See id.* Moreover, Fucilo had no authority from John Hancock to sell the fraudulent investment products in question, nor did John Hancock have any knowledge that Fucilo was selling these products. *See id.* "The only possible connection between John Hancock and the Investors was through their independent relationships with Fucilo." *Id.*

Notwithstanding the lack of a direct transactional relationship, the Second Circuit determined that the investors could compel arbitration against John Hancock. *See id.* at 58–60. The appellate court held that the plain language of Rule 10301 of the NASD Code supports the view that the term customer refers to either a member's or an associated person's customer, affording customers of an associated person a right to compel arbitration against a NASD member. *Id.* at 58–60.

Following the reasoning in *John Hancock*, the United States District Court for the Western District of Louisiana reached an identical conclusion in *BMA Fin. Servs., Inc. v. Guin*, 164 F.Supp.2d 813, 820 (W.D.La.2001). There, investors sought to compel BMA Financial Services ("BMA") into arbitration in connection with the purchase of promissory notes from C.G. Thomason, an associated person of BMA. *See id.* at 815. As in *John Hancock*, however, there was no evidence that BMA was involved in any way with the suspect transactions. *See id.* at 816. Nothing in the record indicated that Thomason ever told the investors that he was affiliated with BMA. *See id.* Furthermore, Thomason had no authority from BMA to sell the notes, nor was BMA aware that Thomason was doing so. *See id.* Finally, there was no evidence that BMA profited in any way from the sale of the notes. *See id.* "[T]he only possible link between BMA and the Defendant–Investors [was] their separate and independent relationships with Thomason." *Id.*

Nevertheless, the Western District of Louisiana compelled the parties to arbitrate. The Court stated that "[a]ll parties agree that Rule 10301(a) does not require the Defendant–Investors to be direct customers of BMA. Instead, they fit within the confines of the Rule—and therefore may require BMA to arbitrate—even if

they are only customers of BMA's 'associated person' and *not* BMA." *See id.* at 820 (emphasis in the original) (citing *John Hancock Life Ins. Co. v. Wilson,* 254 F.3d 48, 59 (2d Cir.2001)).

The Second Circuit's holding in *John Hancock* now represents the majority view. *See Washington Square Sec., Inc. v. Aune,* 253 F.Supp.2d 839, 841 n. 1 (W.D.N.C.2003) ("The majority view is stated in the John Hancock opinion ... holding that customers of the NASD member firm's representative/associated person can require the NASD member to submit to arbitration") (internal citation omitted); *see also Daugherty v. Washington Square Sec., Inc.,* 271 F.Supp.2d 681, 689–90 (W.D.Pa.2003) ("The majority of federal courts faced with interpreting NASD Rule 10301(a) concluded that NASD members must arbitrate disputes raised by customers of their associated persons"). It has been adopted by the Sixth Circuit Court of Appeals, *see Vestax Sec. Corp. v. McWood,* 280 F.3d 1078, 1082 (6th Cir.2002) (following *John Hancock* and rejecting the notion that NASD Code of Arbitration Procedure requires the defendant-investors be direct customers of the NASD member firm in order to compel arbitration against the member), and a plethora of district courts for the proposition that a customer need not "demonstrate that it dealt directly with the NASD member" in order to compel that member into arbitration. *Washington Square Sec., Inc. v. Aune,* 253 F.Supp.2d 839, 844 (W.D.N.C.2003) (internal citation omitted). "Rather, the direct dealings with an 'associated person' [are] sufficient." *Id.* (internal citations omitted); *Daugherty v. Washington Square Sec., Inc.,* 271 F.Supp.2d at 689–90 (W.D.Pa.2003) (holding that plaintiffs who are customers of a registered representative of a NASD member firm are customers of the NASD member firm for purposes of compelling arbitration); *Multi–Financial Sec. Corp. v. Brown,* 2002 WL 32130291, *1, 2002 U.S. Dist. Lexis 26527, *4 (E.D.Pa. Dec. 20, 2002) (holding that customers of registered representative were customers of member-firm); *Washington Square Sec. Inc. v. Sowers,* 218 F.Supp.2d 1108, 1116 (D.Minn.2002) ("Federal case law plainly states that when the investor deals with an agent or representative [of a member], the investor deals with the member, and on that basis the investor is entitled to have resolved in arbitration any dispute that arises out of that relationship") (internal citations omitted); *Hornor, Townsend & Kent, Inc. v. Hamilton,* 218 F.Supp.2d 1369, 1376–77 (N.D.Ga.2002) (holding that a NASD member is required to arbitrate claims brought by the customer of an associated person); *see also Fin. Network Inv. Corp. v. Becker,* 305 A.D.2d 187, 762 N.Y.S.2d 25, 2003 WL 21027852 *1 (N.Y.A.D. 1 Dept. May 8, 2003) ("NASD's definition of a 'customer' is broad, excluding only a broker or dealer, and plainly including customers of an associated person as well as of the member itself ... [W]hen the investor deals with an agent or representative [of a member], the investor deals with the member, and on that basis the investor is entitled to have resolved in arbitration any dispute that arises out of that relationship ... Customer status is not negated by an investment firm's lack of knowledge as to its representatives' customers. Reliance on the advise or recommendation of the registered representative will suffice and it is not required that he or she be the broker of record") (internal citations omitted); *Summit Brokerage Servs., Inc. v. Cooksley,* 2002 WL 31478190 (Fla.Cir.Ct. Nov.6, 2002) ("by dealing with [the firm's] registered representative, [the investor] became a customer of that firm for purposes of NASD arbitration obligations") (internal citation omitted).

Taking the opposite view is *Investors Capital Corp. v. Brown,* 145 F.Supp.2d

1302 (M.D.Fla.2001). In that case, the Honorable Gregory A. Presnell held that "being a customer of an associated person is not, in itself, a sufficient basis for compelling arbitration [against a NASD member]." *Id.* at 1307. Instead, indicia of a direct customer relationship between the NASD member firm and the investor is required. *Id.* at 1308. In that connection, Judge Presnell stated as follows:

[I]n joining the NASD, ICC agreed to arbitrate disputes with its customers, rather than the customers of every person associated with ICC. The opposite construction of Rule 10301, the Court concludes, would do significant injustice to the reasonable expectations of NASD members ... To compel arbitration as 'customers,' the Defendants must establish that they were ICC customers at the time of the transactions giving rise to their arbitration claims ... Because they did not have ICC accounts or other evidence of a traditional customer relationship with ICC, the Defendants must show that they established an informal business relationship with ICC ... or at least attempted to do so ...

*Id.* at 1308 (internal citations and quotations omitted). Based on this reasoning, Judge Presnell ordered a jury trial on the issue of the Defendants customer status. *See id.* at 1309.

This Court's research reflects that at least one other district court has adopted Judge Presnell's reasoning. *See Mony Sec. Corp. v. Vasquez,* 238 F.Supp.2d 1304, 1306–08 (M.D.Fla.2002) (holding that investors who were customers of an associated person were not customers of a NASD member without evidence of a firsthand customer relationship).

In her June 6, 2003 R & R submitted to this Court (Doc. No. 48), Magistrate Judge Spaulding found Judge Presnell's opinion in *Investors Capital Corp.* more persuasive than the legal conclusions reached in *John*

*Hancock* and its progeny. *See* Doc. No. 48 at 20. In addition, she found persuasive value in *Bensadoun v. Jobe–Riat,* 316 F.3d 171, 177–78 (2d Cir.2003), where the United States Court of Appeals for the Second Circuit remanded a case dismissing a suit seeking declaratory and injunctive relief to prevent arbitration on the grounds that whether certain investors were customers within the meaning of the NASD Code of Arbitration Procedure presented a triable issue of material fact.

Consistent with *Investors Capital Corp.* and *Bensadoun,* Judge Spaulding then recommended that this Court proceed with a jury trial on the issue of the Defendant's customer status. *See* Doc. No. 48 at 20. In that connection, the R & R states:

[T]he [Defendant] may be found to be [a] customer[ ] of IFG if the factfinder credits [her] averments that [she] knew and relied upon Micciche's affiliation with IFG in giving [her] money to Intrados S.A. to buy Evergreen believing that [she][was] developing a business relationship with Micciche and IFG. If, however, the factfinder determines that the [Defendant] believed that [she] [was]... delivering funds to Intrados, S.A., to be invested by that company under its sole control and [she] did not intend to develop a business relationship with IFG through Micciche, then [she] may not be found to be [a] customer[ ] of IFG. Because there is disputed evidence on the question of whether Micciche told the [Defendant] that he was affiliated with IFG, or gave them other indicia of his affiliation with IFG, material issues of fact preclude a finding at this juncture that the [Defendant] [is][a] ... customer[ ] of IFG within the meaning of Rule 10301.

*Id.* at 20–21.

Having conducted a de novo review of the facts and law presented in this case,

this Court respectfully declines to adopt Judge Spaulding's R & R insofar as it recommends denying the motion to compel arbitration.[39] While the learned judge's memorandum opinion is lengthy and comprehensive, this Court is more persuaded by the legal authorities holding that a customer's direct dealings with an associated person of a NASD member are sufficient to compel a NASD member into arbitration.

On the same note, this Court respectfully declines to follow Judge Presnell's approach in *Investors Capital Corp.* In this Court's view, *Investors Capital Corp.* is at odds with the language of NASD Code of Arbitration Procedure. *See Hornor, Townsend & Kent, Inc. v. Hamilton,* 218 F.Supp.2d 1369, 1376 (N.D.Ga.2002) ("The Court rejects this holding by the court in *Investors Capital Corp.,* because it is contrary to the plain language of 10301"). Rule 10301(a) of the NASD Code of Arbitration Procedure confers an enforceable right to arbitrate disputes *"between a customer and a member and/or associated person arising in connection with the business of such member."* Rule 10301(a) of the NASD Code of Arbitration Procedure (emphasis added). As used in that context, the term "customer" plainly refers to either the member's or the associated person's customer. *See John Hancock v. Wilson,* 254 F.3d 48, 58–60 (2d Cir.2001).

Further, this Court finds the decision in *Bensadoun* inapposite. In *Bensadoun,* investors transferred funds into Paine Webber with the understanding that Michel Autard (not an associated person) would open accounts in their name and thereafter invest their monies in a combination of stocks and bonds. *See* 316 F.3d at 173.

Instead, however, Autard and Jean Bensadoun (an associated person) deposited the investor's funds into accounts held under the name of Compagnie Financiere Metropolitaine SA ("CFM"), a Swiss company, managed by Autard. *See id.* Thereafter, CFM allegedly went into bankruptcy and Autard was arrested for embezzlement. *See id.* at 174. The issue then became whether the investors could force Bensadoun (an associated person) to arbitrate their disputes by virtue of their dealings with Autard (not an associated person). *See id.* at 176. In other words, the question the Second Circuit considered was "whether there needs to be a direct customer relationship between the associated person and the purported customer" in order to trigger NASD arbitration. *Id.*

■ The facts in this instance differ substantially from the facts in *Bensadoun.* Here, there is no question that the investors were customers of Micciche's, an associated person. Rather, the question posed to this Court is whether a customer (the Defendant) of an associated person (Anthony Micciche) can compel arbitration against a NASD member (IFG Securities) by virtue of the customer's (the Defendant) relationship with the associated person (Anthony Micciche). This Court answers that question in the affirmative.

In light of the foregoing, this Court finds that the Defendant's claim satisfies the first prong of the arbitration requirement. At the time of the events giving rise to the Plaintiff's Motion to Compel Arbitration (Doc. No. 15), the Defendant was a customer of IFG Securities' associated person, and investors may require a NASD member to arbitrate even if they

---

39. As a result of the fact that this Court is granting the Defendant's Motion to Compel Arbitration (Doc. No. 15), the Plaintiff's, IFG Securities, motions seeking injunctive relief to prevent arbitration necessarily must fail.

Thus, insofar as Judge Spaulding's R & R recommends denying IFG Securities' Motion for Preliminary and Permanent Injunction (Doc. No. 2), this Court adopts her findings and legal conclusions.

are only customers of the NASD member's associated person, and not the NASD member. *See BMA Fin. Servs., Inc. v. Guin,* 164 F.Supp.2d 813, 820 (W.D.La. 2001); *see also John Hancock Life Ins. Co. v. Wilson,* 254 F.3d 48 (2d Cir.2001).

## D. The Dispute Arises in Connection with the Business Activities of the Member or in Connection with the Activities of the Associated Person

■ Since the first arbitration requirement is satisfied, this Court must now proceed to analyze the second condition: that the Defendant's claim arises in connection with the business activities of the NASD member, IFG Securities, or in connection with the activities of the associated person, Anthony Micciche. *See Vestax,* 280 F.3d at 1081; *John Hancock Life Ins. Co. v. Wilson,* 254 F.3d 48, 58 (2d Cir.2001) (same); *Hornor, Townsend & Kent, Inc.,* 218 F.Supp.2d at 1375 (same); 1 Thomas H. Oehmke, Commercial Arbitration § 28:14 (2003).

The Defendant's primary claim on this point is that IFG Securities is liable for negligent supervision. In that regard, the Defendant alleges that IFG Securities' failure to supervise Anthony Micciche resulted in the troubled investment in Evergreen Securities.

The NASD Code of Conduct requires its members to supervise the activities of its registered representatives and associated persons. Specifically, it requires its members to establish and maintain a "system to supervise" to ensure compliance with securities laws and regulations and the Rules of this Association. *See generally* NASD Code of Conduct Rule 3010(a), (b) and (e). In relevant part, the Code of Conduct provides as follows:

(a) Supervisory System. Each member shall establish and maintain a system to supervise the activities of each registered representative and associated person that is reasonably designed to achieve compliance with applicable securities laws and regulations, and with the Rules of this Association. Final responsibility for proper supervision shall rest with the member . . .

(b) Written Procedures.

(1) Each member shall establish, maintain, and enforce written procedures to supervise the types of business in which it engages and to supervise the activities of registered representatives and associated persons that are reasonably designed to achieve compliance with applicable securities laws and regulations, and with the applicable Rules of this Association.

(e) Qualifications Investigated.

Each member shall have the responsibility and duty to ascertain by investigation the good character, business repute, qualifications, and experience of any person prior to making such a certification in the application of such person for registration with this Association. Where an application for registration has previously been registered with the Association, the member shall review a copy [of the Application] . . . filed with the Association by such person's most recent previous NASD member employer . . .

NASD Code of Conduct Rule 3010(a), (b) and (e).

Applying these provisions to the facts presented in this case, the Court finds that the Defendant's claim of negligent supervision satisfies the second condition of the NASD arbitration requirement. *First Montauk Sec. Corp. v. Four Mile Ranch Dev. Co.,* 65 F.Supp.2d 1371, 1379 (S.D.Fla. 1999) ("A dispute that arises from a firm's lack of supervision over its brokers arises in connection with its business") (internal citation omitted); *Vestax Sec. Corp. v. McWood,* 280 F.3d 1078, 1082 (6th Cir.

2002) (same); *John Hancock Life Ins. Co. v. Wilson,* 254 F.3d 48, 58–59 (2d Cir.2001) (same); *MONY Sec. Corp. v. Bornstein,* 250 F.Supp.2d 1352, 1356 (M.D.Fla.2003) (same); *Hornor, Townsend & Kent, Inc. v. Hamilton,* 218 F.Supp.2d 1369, 1384 (N.D.Ga.2002) (same); 1 Thomas H. Oehmke, Commercial Arbitration § 28:14 (2003) ("A dispute that arises from a securities brokerage firm's lack of supervision over its brokers arises in connection with its business (for purposes of NASD rules compelling arbitration of disputes)").

The Defendant's cause of action arises from the actions of Anthony Micciche in giving advice regarding investments at a time when Anthony Micciche was a registered representative of IFG Securities, a brokerage firm in the business of providing investment advice through its representatives. Inasmuch as the NASD Code of Conduct requires IFG Securities to supervise its registered representatives, this Court finds that the Defendant's claim has a "sufficient nexus"[40] to IFG Securities' business activities so as to entitle the Defendant to arbitration in conformance with the NASD Code of Arbitration Procedure. *Daugherty v. Washington Square Sec., Inc.,* 271 F.Supp.2d at 691–92 (W.D.Pa. 2003); *Washington Square Sec. v. Sowers,* 218 F.Supp.2d 1108, 1116–18 (D.Minn. 2002) (holding that supervising a registered representative is a NASD member firm's business).

## VI. CONCLUSION

Having conducted a de novo review of the facts and law presented in this matter it is **ORDERED** that:

1. The June 6, 2003 Report and Recommendation issued by United States Magistrate Judge Karla R. Spaulding (Doc. No. 48) is **APPROVED IN PART** and **DISAPPROVED IN PART**. The Report and Recommendation is **APPROVED** insofar as it recommends that this Court deny the Plaintiff's, IFG Network Securities, Inc.'s, January 27, 2003 Motion for Preliminary and Permanent Injunction (Doc. No. 2). The Report and Recommendation is **DISAPPROVED** insofar as it recommends that this Court deny without prejudice the Defendant's, Rua L. King, individually, and as personal representative of the Estate of Rex T. King, March 7, 2003 Motion to Compel Arbitration (Doc. No. 15).

2. The Defendant's, Rua L. King, individually, and as personal representative of the Estate of Rex T. King, June 16, 2003 Objections (Doc. No. 49) to United States Magistrate Judge Karla R. Spaulding's June 6, 2003 Report and Recommendation (Doc. 48) are **SUSTAINED**.

3. The Plaintiff's, IFG Network Securities, Inc., June 20, 2003 Objections (Doc. No. 50) to United States Magistrate Judge Karla R. Spaulding's June 6, 2003 Report and Recommendation (Doc. No. 48) are **OVERRULED**.

4. The Plaintiff's, IFG Network Securities, Inc., January 27, 2003 Motion for Preliminary Injunction (Doc. No. 2) is **DENIED**.

5. The Plaintiff's, IFG Network Securities, Inc., January 27, 2003 Motion for

---

**40.** In reaching this conclusion, this Court emphasizes that merely being a customer of a NASD member or a NASD member's associated person is not enough to entitle an investor to arbitration against a NASD member. *See, e.g., Wheat, First Sec., Inc. v. Green,* 993 F.2d 814, 820–21 (11th Cir.1993) (holding that defendant-investors were not customers of NASD member firm on account of their relationship with agents of the firm's predecessor-in-interest because the acts giving rise to the question of arbitrability occurred before the plaintiff became a successor-in-interest). The investor must also offer a plausible theory connecting the NASD member's business activities to the loss or losses sustained.

Permanent Injunction (Doc. No. 2) is **DE-NIED**.

6. The Defendant's, Rua L. King, individually, and as personal representative of the Estate of Rex T. King, March 7, 2003 Motion to Compel Arbitration (Doc. No. 15) is **GRANTED**. The parties shall proceed to arbitration in conformance with the NASD Code of Arbitration Procedure.

7. All other pending motions are denied as moot.

8. The clerk is directed to close the case.